IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEIN HETTINGA AND ELLEN HETTINGA d/b/a SARAH FARMS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No.: 06-1637 (RJL) |

**REPLY MEMORANDUM OF AMICI CURIAE
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

BACKGROUND .................................................................................................................. 1

STANDARD OF REVIEW ................................................................................................. 2

DISCUSSION ...................................................................................................................... 2

I.   Plaintiffs must exhaust their administrative remedies. ............................................ 2

   A. Plaintiffs misstate the law of this Circuit. ......................................................... 2
   B. None of the sections of the MREA have any effect without an order of the Secretary. ........................................................................................................... 3
   C. Exhaustion is mandatory. ................................................................................... 4
   D. Plaintiffs' exhaustion argument clashes with their equal protection claim. ...... 4

II.  Plaintiffs mischaracterize the impact and history surrounding the passage of the MREA. ............................................................................................................... 5

   A. Section (N) of the MREA is not a forced subsidy – it is a pricing regulation. .. 5
   B. Section (M) simply adds to the regulated entities that sell in California and other geographic areas not subject to federal regulation. .................................. 5
   C. Section 2(b) of the MREA results in additional regulated processors. ............. 6
   D. Plaintiffs offer no facts to support their argument that Congress intended the MREA to be punitive. ........................................................................................ 7

III. The MREA is not a Bill of Attainder ........................................................................ 8

IV.  Plaintiffs offer no legal support for their equal protection claim ........................... 11

   A. Plaintiffs offer no case law to support their claim that the MREA somehow violates their right to equal protection. ............................................................ 11
   B. Plaintiffs' argument that the MREA disadvantages them fails to acknowledge black letter law permitting "discrimination" in the context of a classification subject to rational basis review. ....................................................................... 13

V.   The MREA does not violate due process .............................................................. 13

CONCLUSION .................................................................................................................. 15

DC #277045 v1

# TABLE OF AUTHORITIES

## CASES

*Avocadoes Plus v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004).................................................4

*BellSouth Corp. v. FCC*, 144 F.3d 58 (D.C. Cir. 1998)..........................................................8

*BellSouth Corp. v. FCC*, 162 F.3d 678 (D.C. Cir. 1998)........................................................8

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) .........................................................2, 8

*Darby v. Cisneros*, 509 U.S. 137 (1993)...............................................................................4

*Edaleen Dairy, LLC. v. Johanns*, 467 F.3d 778 (D.C. Cir. 2006) ..................................2, 3, 4

*Federal Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307 (1993)..............................................................................................................13

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) ....................................................8

*Gore, Inc. v. Glickman*, 137 F.3d 863 (5th Cir. 1998).........................................................15

*Romer v. Evans*, 517 U.S. 620 (1996)....................................................................11, 12, 13

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662 (9th Cir. 2002).........................8

*Shamrock Farms Co. v. Veneman*, 146 F.3d 1177 (9th Cir. 1998).......................................12

*United States v. Country Classic Dairies, Inc.*, 2007 WL 677138 (Case No. 2:05CV00499) (D. Utah, Mar. 1, 2007)......................................................................9, 10

*United States v. Florida East Coast Railway Co.*, 410 U.S. 224 (1973) .............................14

*United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993) .....................14, 15

*United States v. Rock Royal Co-op.*, 307 U.S. 533 (1939) .........................................9, 10, 11

*United States v. Ruzicka*, 329 U.S. 287 (1946)...............................................................4, 10

## STATUTES

7 U.S.C. § 608c(15) ........................................................................................2, 3, 4, 11

71 Fed. Reg. 25495 ..................................................................................................6

71 Fed. Reg. 28248 ..................................................................................................6

31 P.S. § 700j-101 *et seq.* ........................................................................................6

DC #277045 v1

Fed. R. Proc. 12(b)(6) ................................................................................................12

Haw. Rev. Stat. Ann. § 157-1 ......................................................................................6

Me. Rev. Stat. Ann. tit. 7, § 2901 *et seq* ......................................................................6

Mont. Code Ann. § 81-23-101 *et seq* ..........................................................................6

N.D. Cent. Code § 4-18.1 (2007) .................................................................................6

N.Y. Agric. & Mkts. Law § 258-M (McKinney 2007) .................................................6

Nev. Admin. Code ch. 584 (2007) ............................................................................6, 7

Pub. L. No. 109-215, 120 Stat 328 (2006) ................................................................3, 13

Pub. L. No. 109-215, 120 Stat. 330 (2006) .................................................................3, 8

Pub. L. No. 104-121, 110 Stat. 857 (1996) ...................................................................9

Va. Code Ann. § 3.1-437 (Michie 2006) ......................................................................6

## MISCELLANEOUS

2006 Congressional Record at H 1151 (Cardoza comments) ....................................7, 8

2006 Congressional Record at H 1151 (Peterson comments) ......................................7

2006 Congressional Record at H 1152 (Obey comments) ............................................7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEIN HETTINGA AND ELLEN HETTINGA d/b/a SARAH FARMS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No.: 06-1637 (RJL) |

### REPLY MEMORANDUM OF AMICI CURIAE
### IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Amici Curiae United Dairymen of Arizona, Shamrock Foods, Shamrock Farms, Parker Farms and Dairy Institute of California, (collectively "amici") by and through counsel, submit the following reply in support of defendant's motion to dismiss.

### BACKGROUND

After the government filed its motion to dismiss and amici filed their brief in support, plaintiffs amended their complaint to add a second entity, GH Processing, as a plaintiff. The original plaintiffs, Hein and Ellen Hettinga d/b/a Sarah Farms, operated as a producer-handler in the Arizona milk marketing order, and ostensibly complain that Section (N) of the Milk Regulatory Equity Act ("MREA") subjects Sarah Farms to the same minimum price requirements as any other handler in Order 131 (the order applicable to handlers like Sarah Farms that distribute milk in Arizona). GH Processing is a handler that operates in Arizona but

sells all of its fluid milk in California. GH Processing complains about Section (M) of the MREA. Section (M) requires that any handler, including GH Processing, who sells more than 25% of its product in a geographic area that is subject to state, but not federal regulation, be subject to the federal order that applies in the geographic area where the handler is located. In other words, GH Processing, which is located in Arizona, must now abide by the federal order in force in Arizona when it sells more than 25% of its milk in California. While Sarah Farms and GH Processing both challenge the MREA, they do so on different, although equally unconvincing, grounds.

## STANDARD OF REVIEW

Plaintiffs correctly explain that the court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs." Opp. at 8. They fail, however, to account for two additional factors. First, while the court must accept well-pleaded factual allegations as true, it need not accept inferences unsupported by facts nor legal conclusions cast as fact. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Second, the court must not only accept the facts as true, it must also find that the facts alleged suffice to support the claims put forth in order to overcome the motion to dismiss.

## DISCUSSION

I.  **Plaintiffs must exhaust their administrative remedies.**

The AMAA requires that a handler wishing to challenge an order must first petition the Secretary of Agriculture. 7 U.S.C. § 608c(15)(A).

A.  **Plaintiffs misstate the law of this Circuit.**

*Edaleen Dairy, LLC. v. Johanns*, 467 F.3d 778 (D.C. Cir. 2006), squarely held that the exhaustion provision in § 15(A) is mandatory. In their opening memorandum in support of Defendant's motion to dismiss, amici described at length the decision in *Edaleen,* which

provides the law of this Circuit with respect to exhaustion of administrative remedies in all AMAA cases. Amici Mem at 6-8. The *Edaleen* court held that producer-handlers, such as Sarah Farms, must exhaust their administrative remedies as provided by section (15)(A) of the AMAA before challenging orders of the Secretary in federal court.[1] This includes both plaintiffs in this matter, neither of whom has exhausted its administrative remedies.

> B. **None of the sections of the MREA have any effect without an order of the Secretary.**

Contrary to the assertions of plaintiffs, the MREA contains no requirement that plaintiffs must pay into the equalization pool. Opp. at 44, fn 14. Rather, the MREA requires only that any order applicable in the Arizona marketing order be modified to include any producer-handler with route disposition of over 3 million pounds per month, as well as all other handlers in that order. Pub. L. No. 109-215, 120 Stat 328, codified at 7 U.S.C. § 608c(5)(N). The MREA in no way prevents the Secretary from changing the terms of the order (*e.g.*, the pooling provisions) in whatever way he sees fit, nor does it impose any term or condition upon the Secretary or any regulated entities. The MREA does not require the issuance of an order. That is up to the Secretary.

With respect to the entities affected by Section (M), Section 2(d) states that "the Secretary of Agriculture shall include in the pool distributing plant provisions of each Federal milk marketing order . . . a provision that a handler described in subparagraph (M) of such section . . . will be fully regulated by the order in which the handler's distributing plant is located." Pub. L. No. 109-215, 120 Stat. 330. In order to give effect to Section (M), the Secretary must amend the existing marketing orders. Without these amendments and the

---

[1] Plaintiffs incorrectly assert in FN10 of their opposition that this remains an open question. While the losing producer-handler sought reconsideration, the full court denied that motion on January 19, 2007. The DC Circuit's disposition fully decides the question in this Circuit.

ongoing orders, the MREA remains toothless. Any challenge to the MREA equates to a challenge to an order of the Secretary and § 15(A) applies.

### C. Exhaustion is mandatory.

Plaintiffs also appear to argue that they need not exhaust their administrative remedies because the expertise of the Secretary provides no assistance to the court in addressing constitutional issues. Opp. at 43-44. This argument suffers from two fatal flaws. First, as discussed above, the law of this Circuit explicitly holds that exhaustion is mandatory, as the statute requires it. *Edaleen*, 467 F.3d at 785.[2] Second, the Supreme Court has held that even handlers bringing *constitutional challenges* to the Secretary's order issued pursuant to the AMAA must first exhaust their administrative remedies. *United States v. Ruzicka,* 329 U.S. 287, 294 (1946); *Edaleen,* 467 F.3d at 782. "Even when they are formulated in constitutional terms, they are questions of law arising out of, or entwined with, factors that call for understanding of the milk industry. And so Congress has provided that the remedy in the first instance must be sought from the Secretary of Agriculture." *Ruzicka,* 329 U.S. at 294. Try as they might, plaintiffs cannot escape the requirement that they comply with § 15(A).

### D. Plaintiffs' exhaustion argument clashes with their equal protection claim.

Plaintiffs take inconsistent positions with respect to exhaustion of administrative remedies and the AMAA. On the one hand, plaintiffs argue that they should not have to exhaust their administrative remedies as required by the AMAA. At the same time, they appear to argue that a critical prong of their equal protection claim is that, unlike other USDA-regulated entities, plaintiffs cannot pursue the administrative and judicial remedies provided by the AMAA because

---

[2] Plaintiffs cite *Darby v. Cisneros,* 509 U.S. 137 (1993), and *Avocadoes Plus v. Veneman,* 370 F.3d 1243 (D.C. Cir. 2004), to support their position that they need not exhaust because the statute does not mandate exhaustion. Opp. at 44. This is not accurate. The MREA amended the AMAA, adding paragraphs (M), (N) and (O) to 7 U.S.C. 608c(5). As the *Edaleen* court held, the AMAA mandates exhaustion.

DC #277045 v1

the MREA "strips" them of that right. Opp. at 27, fn 10. Plaintiffs are wrong on both issues. They must exhaust their administrative remedies for the reasons explained above. Because they are subject to the AMAA and its exhaustion provision, they cannot maintain an argument that they are somehow treated differently than all the other USDA-regulated handlers who must abide by the dictates of the AMAA.

II. **Plaintiffs mischaracterize the impact and history surrounding the passage of the MREA.**

   A. **Section (N) of the MREA is not a forced subsidy – it is a pricing regulation.**

Plaintiffs try to paint the picture that Sarah Farms is being forcibly singled out to subsidize its competitors. *See, e.g.,* Opp. at 6; Comp. ¶ 49. This picture does not tell the full story. As explained in amici's opening brief in support, Amici Mem. at 1-6, Congress and the USDA have created a delicate balancing system in which all handlers, such as Sarah Farms, participate in the equalization pool in order to maintain a stable and equitable marketplace. The only effect of Section (N) is to bring Sarah Farms, and any other such entity that distributes within the Arizona marketing over three million pounds of fluid milk monthly, within the ambit of the Arizona milk marketing order promulgated by the Secretary. Contrary to plaintiffs' assertion, this order applies not just to Sarah Farms, but to all handlers wherever located that distribute in the Arizona order. Rather than singling out Sarah Farms, the MREA brings Sarah Farms into the system in which all other large handlers already must participate.

   B. **Section (M) simply adds to the regulated entities that sell in California and other geographic areas not subject to federal regulation.**

Section (M) levels the playing field rather than singling out GH Processing. Prior to the passage of the MREA, any handler that sold more than 25% of its production in a federal order and the remainder in an area not regulated by USDA was still subject in full to the federal order.

In other words, milk that a handler sold to an unregulated area such as California was subject, under certain circumstances, to payment into the equalization pool as provided by the order governing the area in which the remainder of that handler's milk was sold. The MREA simply expands this concept by requiring federal regulation of any entity that sells at least 25% of its milk to California or any other geographic area not subject to a federal order. Section (M) of the MREA requires that GH Processing and others similarly situated (*e.g.*, plants in Oregon selling into California) be regulated just as are all the other entities that sell milk into California from outside that state.

The fact that the Secretary amended all federal orders to implement Section (M) further belies plaintiffs' contention that section (M) unfairly singles out GH Processing. *See* 71 Fed. Reg. 25495 and 71 Fed. Reg. 28248; Comp. ¶¶ 52.1-52.3. If the MREA was designed to punish GH Processing only, the same provisions applicable to GH Processing could not apply to processors in all federal orders and the Secretary would not have amended all the orders.[3]

### C.     Section 2(b) of the MREA results in additional regulated processors.

Section 2(b) provides additional reason to call plaintiffs' claims into question. While plaintiffs appear to complain about additional regulation and being the sole subjects of such regulation, Section 2(b) of the MREA increases regulation of processors located in Nevada. Prior to the passage of the MREA, processors in Las Vegas legally were not subject to federal orders under any circumstances even if they sold 100 percent of their milk in Arizona (Order 131). Section 2(b) now requires that if a Las Vegas processor sells into an area governed by a

---

[3] While plaintiffs fail to mention it, the provisions of Section (M) do not just apply to entities selling into California. They similarly apply to any plant located within a federal order that sells milk into the following states and regions that have non-federal regulation: Maine, Hawaii, Nevada, Montana, North Dakota, Western New York, Central Pennsylvania, and all of Virginia except the Northern and far Southwestern portions. Me. Rev. Stat. Ann. tit. 7, § 2901 *et seq.* (2000); Haw. Rev. Stat. Ann. § 157-1 to 157-43 (2006); Nev. Admin. Code ch. 584 (2007); Mont. Code Ann. § 81-23-101 *et seq.* (2007); N.D. Cent. Code § 4-18.1 (2007); N.Y. Agric. & Mkts. Law § 258-M (McKinney 2007); 31 P.S. § 700j-101 *et seq.* (2007); Va. Code Ann. § 3.1-437 (Michie 2006).

federal order, that processor will be subject to that federal order (*e.g.,* Arizona).[4] This would result in greater costs for any such processor selling for instance in Arizona, the same harm that plaintiffs claim is directed exclusively at them.[5] Section 2(b) is integral and critical because Congress simultaneously closed multiple loopholes when it passed the MREA. When Las Vegas plants sell into Arizona now, they, like Sarah Farms, are subject to identical regulatory terms and conditions under the Order.

### D. Plaintiffs offer no facts to support their argument that Congress intended the MREA to be punitive.

Plaintiffs' "allegations" that the MREA was punitive both in terms of timing and in terms of content do not qualify as fact. They are conclusions drawn by plaintiffs with no support in the record. *See* Comp. ¶¶ 40-44. Plaintiffs assert that Congress intended to punish them, yet the word "punish," or even the concept of punishment, does not appear in the Congressional Record. Neither does the word "target." *Compare* Comp. ¶ 41 *with* March 28, 2006 Congressional Record at H 1151 (Peterson comments). Representative Obey's comments do not mention either targeting or punishment. *Compare* Comp. ¶ 42 *with* March 28, 2006 Congressional Record at H 1152 (Obey comments). Most damaging to plaintiffs' case, Representative Cardoza actually said that the "bill will close a dangerous loop-hole that allows a few large producer-handlers to escape all these carefully crafted Federal and State regulatory requirements. . . This loophole has the opportunity to affect every milk marketing order across the country."[6] March 28, 2006

---

[4] If the processor sells less than 25% combined into federal order areas, then only that portion of its milk is subject to payment into the equalization pool. If the processor sells at least 25% into federal order areas, that processor's entire route disposition is subject to payment into the pool. Plaintiffs inaccurately describe this provision. Comp. ¶ 52.5.

[5] Plaintiff GH Processing asserts that the MREA adversely affects it vis-à-vis Nevada processors except it doesn't actually allege that it is competing against Nevada processors or that Nevada processors sell milk in Southern California at all. Its assertions also carefully avoid the existence and regulatory power of the Nevada Dairy Commission – another supporter of the MREA. Nev. Admin. Code ch. 584 (2007).

[6] This last statement illustrates the far-reaching effects of closing the loophole that could affect the whole country. This undermines plaintiffs' unsupported allegations of the MREA singling them out for punishment.

Congressional Record at H 1152. *Compare with* Comp. ¶ 44. None of plaintiffs' statements regarding Congressional intent can be taken as fact because they are inaccurate inferences drawn from the statements rather than representations of the statements themselves. *Browning*, 292 F.3d at 242.

In their allegations regarding legislative intent, plaintiffs neglect to mention that the Senate unanimously passed the bill that would become the MREA on December 16, 2005, almost 3 months before their lawsuit was even filed. Pub. L. No. 109-215, 120 Stat. 330. Plaintiffs' argument that the legislation was timed to interfere with their hearing falls flat in light of the previous Senate passage of the bill. Plaintiffs have not alleged any facts that support any of their claims involving punitive intent.

### III.  The MREA is Not a Bill of Attainder.

Plaintiffs' Bill of Attainder argument misses the mark and fails to address the arguments of the government and amici in their opening briefs. In addition to missing the point of the more recent *BellSouth Corp.* cases[7], plaintiffs blithely ignore the contrary analysis and conclusion from the Ninth Circuit in the Exxon Valdes case. *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662 (9th Cir. 2002). Plaintiffs' explanation and comparison to the *Foretich* case is likewise inappropriate. *See Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003). Beyond the specificity applied to Dr. Foretich and his parents in the Elizabeth Morgan law, there was in that case an overturning by Congress of specific and final findings of fact (as opposed to legal requirements applied prospectively only) by multiple judicial authorities in favor of the Foretichs and against Elizabeth Morgan. Congress' imprimatur in that case was permanent, final and dispositive as to past conduct. The Foretich family could not alter the punitive result that

---

[7]   *BellSouth Corp. v. FCC*, 144 F.3d 58 (D.C. Cir. 1998); *BellSouth Corp. v. FCC*, 162 F.3d 678 (D.C. Cir. 1998).

affected core parenting rights and stained their reputations with Congressional findings contrary to litigated facts. The MREA as applied by USDA through its orders does not make findings of fact at all.

In contrast, the logical conclusion of plaintiffs' argument is that economic regulations cannot change to address known loopholes. Beyond the fact that the MREA can (and does) have application broader than alleged, beyond the fact that it is not based upon past acts, but future conduct only, there is the immutable fact that economic regulation does not rise to the level of punishment necessary in a Bill of Attainder case. In a just-decided case, the United States District Court of Utah was confronted with an assertion that USDA had not complied with certain small business requirements and thus was barred from collecting pool assessments from a milk processor (the very financial charge claimed by plaintiffs here to be punishment) because the Small Business Regulatory Flexibility Act ("SBREFA") (Pub. L. No. 104-121, 110 Stat. 857 (1996) gave courts authority in such circumstances to excuse payments of "fines, penalties, or damages." *United States v. Country Classic Dairies, Inc.*, 2007 WL 677138 (Case No. 2:05CV00499) (D. Utah, Mar. 1, 2007). After concluding that like plaintiffs here, Country Classic, in a USDA collection case, could not assert certain defenses because it had failed to exhaust its administrative remedies, the court concluded nonetheless that the SBREFA claim would fail since the pool assessment and late payment charges "are not 'fines, penalties, or damages.'" *Id.* at 7. The Utah Court's finding is entirely consistent with decades of jurisprudence from *United States v. Rock Royal Co-op.*, 307 U.S. 533 (1939) to the present that pool assessments are not takings of property and are not fines, penalties or damages. Indeed, the first definition of "penalty" in *The American Heritage Dictionary of the English Language* is: "a punishment established by law or authority for a crime or offense." (Fourth Edition, Houghton

Mifflin Co. 2004. http://dictionary.reference.com/browse/penalty (accessed March 13, 2007)). In *Rock Royal*, the U.S. Supreme Court expressly disavowed the notion that the complained-of required pool payment deprives plaintiffs of liberty or property. It also took direct aim at plaintiffs' "subsidization of competitors" and equalization of wealth arguments inherent in their Bill of Attainder claims: "No such exaggerated equalization of wealth and opportunity is proposed. The pool is only a device reasonably adapted to allow regulation of the interstate market upon terms that minimize the results of the restrictions." *Rock Royal,* 307 U.S. at 572.

Similarly, the Utah district court's conclusion that the pool assessment due from Country Classic and under the MREA as applied through USDA orders is not a penalty supports the position that regardless of all the other allegations, the MREA, which as a result of USDA rulemaking and issuance of amended orders results in a requirement to make the pool payment, does not impose punishment under either the SBREFA or the U.S. Constitution's Bill of Attainder provision.

The *Country Classic* case is also instructive as to the exhaustion issue. To amici's knowledge, plaintiffs have been making the required pool settlement fund payments that Country Classic did not make. *Country Classic*, 2007 WL 677138 at 2. If, however, plaintiffs failed to make those pool settlement fund payments, USDA (not the United States or Congress) likely would, as it has in Utah, sue to collect those payments. In that event, should plaintiffs interpose their Bill of Attainder and other assertions as defenses, the Utah Court's analysis and the United States Supreme Court in *Ruzicka* would prevent the plaintiffs from interposing those defenses at that time in a collection case. The suit would be for failure to comply with the pricing and pooling provisions of Order 131, not failure to comply with the MREA. Plaintiffs surely cannot evade the 15(A) requirements when using this lawsuit as a sword when *Ruzicka* and *Country*

*Classic* would prevent them from defending against a claim of non-payment, all for not having asserted their statutorily required administrative claims under 7 U.S.C. § 608c(15)(A).

Based upon *Rock Royal* and its progeny, the Bill of Attainder argument must fail.

IV. **Plaintiffs offer no legal support for their equal protection claim.**

    A. **Plaintiffs offer no case law to support their claim that the MREA somehow violates their right to equal protection.**

Plaintiffs attempt to get around the motion to dismiss by arguing that an equal protection claim cannot be decided on a motion to dismiss because the presence of a rational basis for the classification can only be determined at the "merits stage." Opp. at 25. Plaintiffs cite *Romer v. Evans* in support of their statement. *Id.* Unfortunately, neither the quote from *Romer*, nor any other part of that opinion supports plaintiffs' bald assertion. *Romer* simply says that in determining whether a provision violates equal protection, the court must understand the relationship between the provision and its purpose. *Romer v. Evans*, 517 U.S. 620, 632 (1996).[8] *Romer* supports the general equal protection standard, that in "the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Id.* All the court must do at this stage is determine if plaintiffs have alleged sufficient facts to support a claim for equal protection. Since a statutory provision must meet only the loosest standard of scrutiny in order to survive rational basis, plaintiffs must allege facts sufficient to demonstrate absolutely no basis for the MREA, a task plaintiffs fail to fulfill.

Plaintiffs' other arguments suffer from a lack of support. Plaintiffs spend most of a paragraph arguing that there is no basis to dismiss their claim before it can be addressed on the

---

[8] While the procedural history of the case is not fully detailed in the opinion, it appears that at least the initial decision was in response to a motion for a temporary restraining order, a proceeding in which the court must arrive at conclusions without the benefit of intensive fact-finding, just as in a motion to dismiss.

DC #277045 v1

merits, yet they provide nary a citation for this argument. Opp. at 30-31. Plaintiffs go on to claim that the Supreme Court in *Romer* "squarely concluded" that plaintiffs have a right to present a rational basis claim on the merits, yet neither the page cited nor any other page in the opinion contains a single phrase that says any such thing.

Furthermore, taking plaintiffs' argument to its logical conclusion, that no equal protection claim can be dismissed pursuant to Rule 12(b)(6), demonstrates the unreasonableness of plaintiffs' position. Fed. R. Proc. 12(b)(6). Case law, including cases cited by both the government and amici, demonstrate that this is simply not accurate.

In *Shamrock Farms Co. v. Veneman*, the 9th Circuit considered a claim for equal protection and due process. 146 F.3d 1177 (9th Cir. 1998). The *Shamrock Farms* court explained that even though it was not clear that the parties had raised the claims before the District Court, the appellate court could address it "because the arguments are purely legal in nature." *Id.* at 1183. The Court found that the plaintiff failed to allege sufficient facts to support its claim, as the plaintiff there, like Sarah Farms and GH Processing, "simply failed to set forth facts that would support an equal protection violation." *Id.* The court went on to find that "it is insufficient to assert that the milk laws establish discriminatory classification; the complaint must also allege facts to demonstrate that the classifications are arbitrary or that they are not rationally related to legitimate state interests." *Id.* The court therefore dismissed the complaint without getting to the "merits stage." Because the plaintiffs' claims here suffer from the same deficiencies as did those of the plaintiffs in *Shamrock Farms*, this court may, and should, dismiss the complaint without proceeding to the "merits stage."[9]

---

[9] Plaintiffs claim that they allege facts in ¶¶ 50-52, 57 and 65 to support their contention that Congress lacked rational basis. Opp. at 26. These paragraphs contain no facts. They are simply conclusory statements by plaintiffs.

### B. Plaintiffs' argument that the MREA disadvantages them fails to acknowledge black letter law permitting "discrimination" in the context of a classification subject to rational basis review.

Plaintiffs fail to address the overwhelming weight of the case law cited by the government and amici (as well as by plaintiffs themselves) which holds that in order to demonstrate rational basis, a law must simply advance a government interest, even if it disadvantages certain entities in so doing. *Romer v. Evans*, 517 U.S. at 633, *Federal Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307, 313-14 (1993) ("where there are 'plausible reasons' for Congress' action, 'our inquiry is at an end'.") Given both the state of the Congressional Record, as described by amici and ignored by plaintiffs, and the Supreme Court holding that "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data,"[10] plaintiffs cannot prove any set of facts that will support their equal protection claim, as the government clearly had a rational basis in passing the MREA in order to provide equity in the milk marketplace.[11] *See* Amici Mem. at 9-12.

### V. The MREA does not violate due process.

Plaintiffs' response to the arguments with respect to their alleged due process violation muddies the waters and provides no clarity to their claim. Plaintiffs seem to argue that their "rights" to engage in the occupation of their choice and to judicial review were infringed upon by the MREA but offer little support or explanation.

---

[10] *Beach Communications*, 508 U.S. at 315.
[11] Plaintiffs claim that the obvious inference with respect to the purpose of Congress in passing the MREA was to produce the outcome the dairy lobbyists wanted. Opp. at 31. This inference is neither obvious nor supported by the facts that plaintiffs chose to ignore. This includes both the floor comments supporting the legislation as discussed above and the preamble to the bill which says that the act is "to ensure regulatory equity between and among all dairy farmers and handlers for sales of packaged fluid milk in federally regulated milk marketing areas and into certain non-federally regulated milk marketing areas from federally regulated areas. . ." Pub. L. No. 109-215, 120 Stat. 328.

Plaintiffs also incorrectly claim that the court in the Northern District of Texas dismissed their suit because of the passage of the MREA, thus allegedly preventing them from judicial review to which they were entitled. Opp. at 33. Plaintiffs ignore the text of the district court opinion as well as the explanation by amici of the holding of that opinion.[12] In denying the Hettinga's request for a preliminary injunction, the court found that the Hettingas failed to demonstrate any of the necessary elements to obtain an injunction. While the court noted in a footnote at the end of the opinion that it appeared that the passage of the MREA would moot the request for injunctive relief, it also noted in that same footnote that the passage of the MREA *was not outcome determinative* (emphasis added). See Exhibit 1 to Defendant's Motion to Dismiss at p. 4. Plaintiffs' repeated conclusion that the MREA prevented them from obtaining judicial review simply does not comport with the clear facts.

Plaintiffs' argument regarding the alleged infringement of their due process rights lacks any legal support. Neither of the cases plaintiffs cite provide them any support. The *Florida East Coast Railway* case which they allege stands for the proposition that adversely affected parties have the right to appeal an agency decision to federal court for review does not include that proposition, nor does it address the issue of any right to appeal. Opp. at 33; *United States v. Florida East Coast Railway Co.*, 410 U.S. 224 (1973). Plaintiffs also cite *United States v. James Daniel Good Real Property*, 510 U.S. 43, 47-8 (1993), as support for the allegation that the MREA denied the Hettingas due process by not allowing them to have a hearing to show the USDA rule was unlawful. The *James Daniel* opinion, however, addresses the seizure of real property in a civil forfeiture case and explicitly notes that the holding applies to real property in

---

[12] Plaintiffs also conveniently gloss over the fact that they had a hearing on their claims and the judge adjudicated them on their merits. It was Sarah Farms that sought and obtained dismissal of its own case filed in Lubbock, Texas.
14

the context of an ex parte seizure, circumstances which have absolutely no bearing on the case at bar. *James Daniel Good Real Property*, 510 U.S. at 52-55, 59, 61.

In addition to lacking any support, the assertion that they were denied due process also contradicts the law of the Fifth Circuit which requires handlers, including producer-handlers to exhaust their administrative remedies before bringing their dispute to federal court. *Gore, Inc. v. Glickman*, 137 F.3d 863, 867-68 (5th Cir. 1998). Plaintiffs had not exhausted their administrative remedies prior to challenging the Secretary's order in the Northern District of Texas last March. Thus, the judicial review that plaintiffs appear to complain about "losing" was judicial review to which they were not even entitled.[13] Plaintiffs clearly have not alleged sufficient facts, nor provided a legal framework to support a claim for due process.

## CONCLUSION

For all the reasons stated above, as well as in the opening briefs of defendant and amici, plaintiffs' Second Amended Complaint lacks sufficient factual allegations to support its claims. Amici respectfully urge this Court to dismiss the complaint.

Respectfully submitted,

/s/ Charles M. English, Jr.
Charles M. English, Jr.
D.C. Bar No.: 386572
Sara Pikofsky
D.C. Bar No.: 485948
Thelen Reid Brown Raysman & Steiner LLP
701 8th Street NW
Washington, DC 20001
Telephone: 202.508.4000

March 16, 2007

*Attorneys for Amici Curiae*
*United Dairymen of Arizona, et al.*

---

[13] GH Processing was not a party to the suit before the Northern District of Texas. Therefore, any argument by it that the MREA violated due process by prohibiting a fair hearing on that suit must clearly fail.