# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

HEIN HETTINGA AND ELLEN                 )
HETTINGA d/b/a SARAH FARMS et al.,      )
                                        )
         Plaintiffs,                    )          Civil Action No. 06-1637 (RJL)
                                        )
v.                                      )
                                        )
UNITED STATES OF AMERICA,               )
                                        )
         Defendant.                     )

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    Plaintiffs' Complaint Should Be Dismissed for Lack of Subject Matter
      Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Plaintiffs' Litigation Is Barred Because Plaintiffs Did Not Comply
            with the Mandatory Exhaustion Requirement of Section 15(A). . . . . . . . . 3

      B.    Plaintiffs' Amended Complaint Still Does Not Identify a Valid
            Waiver of Sovereign Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    Sarah Farms Lacks Standing to Challenge Subsection (N) Because
            Even If Subsection (N) Were Stricken, Sarah Farms Would Be
            Subject to the Same Regulatory Conditions. . . . . . . . . . . . . . . . . . . . . . . . 6

II.   The MREA Does Not Violate the Constitution, and Plaintiffs' Complaint
      Should Be Dismissed for Failure to State a Claim for Relief. . . . . . . . . . . . . . . . 7

      A.    Plaintiffs Misconstrue the Appropriate Standard of Review, and As
            a Matter of Procedure, It is Appropriate to Dismiss Their Claims at
            this Stage in the Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    The MREA Is Not a Bill of Attainder. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            1.    Subsections (M) and (N) of the MREA Are Not Bills of
                  Attainder Because the Specificity Element Is Not Satisfied
                  Here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.    The MREA Does Not Inflict a Legislative Punishment. . . . . . . . 12

                  a.    Historical Analysis of Punishment. . . . . . . . . . . . . . . . . 12

                  b.    Functional Analysis of Punishment. . . . . . . . . . . . . . . . 15

                  c.    Motivational Analysis of Punishment. . . . . . . . . . . . . . . 16

            3.    The MREA Is Not a Bill of Attainder Because It Does Not
                  Usurp Judicial Functions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      C.    Plaintiffs' Equal Protection Count Should Be Dismissed. . . . . . . . . . . . 19

i

D.    Plaintiffs' Due Process Count Should Be Dismissed. . . . . . . . . . . . . . . 19

E.    The MREA Does Not Deny Plaintiffs the Ability to Seek Judicial
      Review of the USDA Regulations.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## INTRODUCTION

Plaintiffs' recent amendments to the complaint (Docket #16) have not altered the underlying relief that plaintiffs seek.  They still want the Court to strike down as unconstitutional two provisions of the Milk Regulatory Equity Act of 2006, Pub. L. No. 109-215, 120 Stat. 328 (Apr. 11, 2006) (the "MREA"), codified at 7 U.S.C. § 608c(5)(M)-(N) and referred to as MREA subsections (M) and (N).  The impact of plaintiffs' pleading amendments on defendant's pending motion to dismiss (Docket #4) is that they address one deficiency that defendant had identified in plaintiffs' ability to bring this lawsuit.  The cure brought on by the amendments, however, is limited to only one issue, and plaintiffs' entire action should still be dismissed for lack of subject matter jurisdiction and for failure to state a claim for relief.

More specifically, by amending its complaint to add a second plaintiff (GH Processing), Sarah Farms mooted one part of defendants' motion to dismiss: Sarah Farms's lack of standing to challenge subsection (M) (see Def.'s Mem. at 16-18).  As alleged, GH Processing is a handler of milk that transports milk outside of the Arizona Milk Marketing Region (also referred to as Order 131) and into California.  (Am. Compl. ¶ 1.1.)  On the basis of those allegations, plaintiffs, through GH Processing (but not through Sarah Farms), have alleged a sufficient injury-in-fact with respect to subsection (M) of the MREA.  For that reason, defendant withdraws its lack of standing (injury-in-fact) argument regarding subsection (M).  The remaining bases on which defendants moved to dismiss remain unaffected by the pleading amendments, and plaintiffs' entire complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim for relief.

The Court still lacks subject matter jurisdiction over plaintiffs' lawsuit in three respects. First, neither Sarah Farms nor GH Processing have complied with the mandatory exhaustion

1

requirement for bringing this suit.  See 7 U.S.C. § 608c(15)(A); United States v. Ruzicka,

329 U.S. 287, 294 (1946).  Second, plaintiffs have not identified a valid waiver of sovereign

immunity upon which they may sue the government, again depriving the Court of subject matter

jurisdiction over the entire litigation.  Third, Sarah Farms has not satisfied the traceability and

redressability elements of constitutional standing for its constitutional challenges to

subsection (N) of the MREA, which caps the applicability of the producer-handler exception at

three-million pounds of monthly route disposition.  This is so because regulations, see 71 Fed.

Reg. 9430, 9433, Part 3 (to be codified at 7 C.F.R. § 1131.10), impose the exact same cap on the

producer-handler exception – regardless of the legal viability of subsection (N).

Even if the Court had subject matter jurisdiction to evaluate plaintiffs' claims, they are all

appropriately dismissed through Rule 12(b)(6) motion, and there is no need to postpone the

adjudication of these counts until a so-called "merits" stage.

Subsections (M) and (N) of the MREA do not satisfy any of the elements of a bill of

attainder.  These subsections are not sufficiently specific since they do not identify plaintiffs by

name or by past conduct.  Nor do subsections (M) and (N) meet the standards for legislative

punishment.  They fail under the historical test because they are regulations governing economic

activities; because plaintiffs can avoid the effects of the MREA by altering their business

operations; and because these subsections do not condemn plaintiffs or subject them to a public

reprimand.  Likewise, subsections (M) and (N) do not function in a retributive or punitive

fashion with respect to plaintiffs.  Similarly, the legislative record is devoid of clear proof that

Congress was motivated by a desire to punish plaintiffs when it enacted subsections (M) and (N).

Plaintiffs similarly fail to state equal protection and due process claims.  Subsections (M)

and (N) are subject only to rationality review, and they easily survive such review since they

2

further legitimate government goals (ensuring market stability and promoting regulatory equity) through a reasonable means (reducing the circumstances under which handlers would be excepted from federal regulation and from making pool payments). Nor are these subsections mandatory statutory punishments, since their effects can be avoided.

In short, plaintiffs' lawsuit continues to be jurisdictionally deficient and still fails to satisfy the legal requirements for the constitutional challenges they attempt to bring; consequently, the entire complaint should be dismissed.

## ARGUMENT

**I.      Plaintiffs' Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction.**

**A.      Plaintiffs' Litigation Is Barred Because Plaintiffs Did Not Comply with the Mandatory Exhaustion Requirement of Section 15(A).**

Defendant moved to dismiss this action for failure to exhaust, and plaintiffs do not dispute that they have not complied with the mandatory exhaustion procedures contained in Section 15(A), see 7 U.S.C. § 608c(15)(A). Rather, plaintiffs try to avoid the exhaustion requirement by arguing first that the exhaustion requirement of Section 15(A) does not apply here, and second that even if otherwise required, exhaustion would be futile, and therefore cannot be imposed here. (Pls.' Mem. in Opp. at 43-45.) Each of those arguments fails.

First, exhaustion is statutorily required here. By its terms, Section 15(A) applies to handlers regulated by federal milk marketing orders who claim that "any such order or any provision of any such order ***or any obligation imposed in connection therewith*** is not in accordance with law . . ." 7 U.S.C. § 608c(15)(A) (emphasis added). Plaintiffs' lawsuit constitutes a challenge to an "obligation imposed in connection" with a federal milk marketing order as their complaint makes clear. For instance, plaintiffs' complaint alleges that as a result of

3

the MREA, plaintiffs incur a "a concomitant obligation to make prohibitively great monetary payments to their competitors in the production and sale of fluid milk . . . ." (Am. Compl. ¶ 4.) That concomitant obligation is not imposed directly by the terms of the MREA, but rather from the pooling requirements for Order 131, the federal milk marketing order in which plaintiffs conduct their businesses. See, e.g., 7 C.F.R. § 1131.71 (providing for handler payments into the settlement fund for Order 131). Thus, by challenging the MREA, plaintiffs are disputing an obligation imposed in connection with a federal milk marketing order, and are consequently subject to the exhaustion requirement.

Second, Section 15(A) exhaustion is mandatory, and no futility exception applies.[1]  It has been long established (and not disputed by plaintiffs) that Section 15(A) mandates exhaustion for handlers. See United States v. Ruzicka, 329 U.S. 287, 294 (1946); Edaleen Dairy, LLC v. Johanns, 467 F.3d 778, 784 (D.C. Cir. 2006) ("Since the AMAA was enacted in 1937, courts have repeatedly held that its exhaustion requirement is mandatory, and that aggrieved handlers may not seek judicial review of milk marketing orders until they have exhausted their administrative remedies."). Where exhaustion is mandatory (and not prudential) courts will not 'read in' futility or other exceptions to the requirement. See Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); Edaleen Dairy, 467 F.3d at 785 (refusing to excuse the Section 15(A) exhaustion requirement even where exhaustion was alleged to be duplicative). This principle holds true even in the context of

---

[1]  The Section 15(A) exhaustion requirement should not be devalued. Exhaustion serves valuable purposes, such as establishing an administrative record and ensuring necessary facts about plaintiffs' operations to ascertain the precise impact of the challenged statutes.

constitutional claims, which the Supreme Court long ago determined were subject to the Section 15(A) exhaustion requirements.  See Ruzicka, 329 U.S. at 294 (requiring exhaustion for constitutional claims).

For these reasons, the Court does not have subject matter jurisdiction over plaintiffs since they have not exhausted their mandatory administrative remedies.

**B.    Plaintiffs' Amended Complaint Still Does Not Identify a Valid Waiver of Sovereign Immunity.**

Even amending their complaint, plaintiffs do not identify an applicable statutory waiver of sovereign immunity to permit their suit, and on that grounds, their action should be dismissed for lack of jurisdiction.  In their amended complaint and opposition brief, plaintiffs do not attempt to identify a specific statutory waiver of sovereign immunity for their suit; rather they argue that the doctrine of sovereign immunity is not applicable to constitutional challenges seeking declaratory and injunctive relief.  (Am. Compl. ¶ 10.1; Mem. in Opp. at 40-43.)

While plaintiffs' position may be true for constitutional challenges brought against governmental officials, see Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984) ("[S]overeign immunity does not bar suits for specific relief *against government officials* where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory authority." (emphasis added)), this Circuit has made clear that there are no exceptions to sovereign immunity in suits brought directly against the United States.  As the D.C. Circuit explained in Clark: "These two exceptions do not apply when the suit is brought directly against the United States rather than against a government official."  Id. at 104 n.31 (referencing the exceptions for claims of unconstitutional conduct and *ultra vires* actions).  Thus, the exception for unconstitutional conduct does not apply here because plaintiffs' suit is directly against the

5

United States.  Consequently, plaintiffs have not put forward a valid statutory waiver of sovereign immunity to enable them to sue the United States.

       **C.**    **Sarah Farms Lacks Standing to Challenge Subsection (N) Because Even If Subsection (N) Were Stricken, Sarah Farms Would Be Subject to the Same Regulatory Conditions.**

Defendant moved to dismiss Sarah Farms's subsection (N) claim because subsection (N) and USDA regulations, see 71 Fed. Reg. at 9433, Part 3 (to be codified at 7 C.F.R. § 1131.10), govern the same conduct, yet plaintiffs do not challenge the USDA regulation.[2]  Thus, even if subsection (N) were declared unconstitutional or enjoined, Sarah Farms would still be held to identical regulatory conditions, and it would not qualify for the producer-handler exception. Without challenging both subsection (N) and the USDA regulations, Sarah Farms does not satisfy the traceability and redressability elements of constitutional standing because both provisions need to be stricken for Sarah Farms to qualify as a producer-handler.

Plaintiffs argue that they were justified in suing only on the basis of subsection (N) because subsection (N) took away Sarah Farms's abilities to alter its regulatory status through administrative process and to challenge the legality of the USDA regulations.  (Mem. in Opp. at 36-40).  Those arguments are based on an incorrect premise since subsection (N) does not eliminate any recourse that plaintiffs have.  Plaintiffs can still challenge USDA's regulations through the administrative process and thereafter in the courts, but to satisfy the traceability and redressability requirements for constitutional standing, plaintiffs must challenge both subsection (N) as well as the USDA regulations.  Sarah Farms will not have standing if it challenges only the regulations or only the statute since the unchallenged law (either the

---

    [2]  This section is limited to Sarah Farms because GH Processing does not claim to be a producer-handler (see Am. Compl. ¶ 1.1), and thus has no standing to dispute subsection (N).

regulation or the statute) will impose the same condition on Sarah Farms.

Furthermore, Sarah Farms's arguments conflict with basic principles of constitutional law and equity. It is a fundamental canon of constitutional jurisprudence that a court does not reach constitutional questions unless it is necessary to do so. See Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); Stillman v. CIA, 319 F.3d 546, 548 (D.C. Cir. 2003). Here, there is no reason to reach a constitutional question since Sarah Farms's regulatory status will be identical regardless of whether subsection (N) is declared unconstitutional or not. Also, under equitable principles, a declaration of unconstitutionality requires "immediacy and reality." See Golden v. Zwickler, 394 U.S. 103, 108 (1969) (explaining that for a controversy to qualify for a declaratory judgment, it must be "of sufficient immediacy and reality." (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941))). No such immediacy or reality exists for declaring subsection (N) unconstitutional because, even if such a ruling occurred, Sarah Farms would still be regulated by the USDA regulations.

In short, Sarah Farms is governed by both regulation and statute, and to have constitutional standing Sarah Farms must challenge both of those sources of law, which it has not done.

## II.    The MREA Does Not Violate the Constitution, and Plaintiffs' Complaint Should Be Dismissed for Failure to State a Claim for Relief.

As a matter of law, the MREA does not violate the Bill of Attainder Clause, the Equal Protection Clause, or the Due Process Clause. Therefore, plaintiffs' complaint should be dismissed for failure to state a claim for relief.

A.    **Plaintiffs Misconstrue the Appropriate Standard of Review, and As a Matter of Procedure, It is Appropriate to Dismiss Their Claims at this Stage in the Litigation.**

Plaintiffs' opposition disregards the standards for review for a Rule 12(b)(6) motion in two significant respects.

First, plaintiffs' reliance on vague and conclusory statements in the complaint is of no legal significance at this stage.  See ASA Accugrade, Inc. v. Am. Numismatic Ass'n, 370 F. Supp. 2d 213, 215 (D.D.C. 2005).  For that reason, plaintiffs' assertions, such as their statements that they were denied their procedural due process rights associated with the adjudicatory process (Mem. in Opp. at 33), are legal conclusions "cast in the form of factual allegations," which receive no weight at the Rule 12(b)(6) stage.  Kowal v. MCI Comm'ns Corp., Inc., 16 F.3d 1271, 1275 (D.C. Cir. 1994).

Second, plaintiffs misconstrue the legal standards for a Rule 12(b)(6) motions and for evaluating their claims of the unconstitutionality of subsections (M) and (N) in their oft-repeated argument that the constitutional questions should be postponed until the so-called "merits stage." (Mem. in Opp. at 30-31, 34.)  Plaintiffs' equal protection and due process counts are challenges to the regulation of economic markets which are governed by rational basis review.  See Lamers Dairy Inc. v. USDA, 379 F.3d 466, 473 (7th Cir. 2004) (applying rational basis review to constitutional challenges to milk regulation).  Under rational basis review, a statute will be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification."  FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993); see also Lamers Dairy, 379 F.3d at 473 ("Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized.").  As to the Rule 12(b)(6) standards, it has been long established that a complaint should be dismissed if it is clear that no relief could be granted.  See

8

Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Taken together, then, if any conceivable basis can be hypothesized for economic regulations, then due process and equal protection challenges fail as a matter of law, and a complaint should be dismissed through Rule 12(b)(6).  As explained in defendant's opening brief and further below, the MREA survives rational basis review; plaintiffs' claims should therefore be dismissed without postponement.

### B.    The MREA Is Not a Bill of Attainder.

As explained in defendant's opening brief (Mem. in Supp. at 26-38), the MREA does not satisfy any of the requisite elements of a bill of attainder, and plaintiffs' opposing arguments (Mem. in Opp. at 9-24) fail to demonstrate that even one of these elements is satisfied.

### 1.    Subsections (M) and (N) of the MREA Are Not Bills of Attainder Because the Specificity Element Is Not Satisfied Here.

Subsections (M) and (N) of the MREA, do not satisfy the specificity element of the bill of attainder analysis.  The specificity element is not satisfied when either of two conditions is met: (i) the legislation is open-ended in its applicability; or (ii) the legislation governs conditions within a person's control, as opposed to immutable characteristics.  (Mem. in Supp., 26-28.) Defendant pointed out that ***both*** of those conditions exist here – subsections (M) and (N) are open-ended (other entities meeting the conditions would be subject to their terms), and they do not regulate based on conditions beyond plaintiffs' present control, such as past conduct (plaintiffs can change their business practices to avoid regulation).  Plaintiffs' opposition does not dispute the premise of either of these arguments – plaintiffs apparently concede that subsections (M) and (N) are open-ended in their applicability that plaintiffs are not regulated based on an immutable characteristic.  Instead, plaintiffs emphasize that subsections (M) and (N)

currently apply only to them, and plaintiffs advocate use of the 'easily ascertainable' test.  (Mem. in Opp. 10-13.)  Those arguments fail, and plaintiffs are unable to satisfy the specificity element; on that ground alone, their bill of attainder count should be dismissed.

At the outset, it is of no legal significance that subsections (M) and (N) presently apply only to plaintiffs because subsections (M) and (N) are open-ended in their applicability. Plaintiffs' contrary argument is most summarily rejected by the Supreme Court's decision in Nixon v. Administrator of General Services, 433 U.S. 425 (1977).  There, the Supreme Court considered and rejected the argument that the specificity prong could be satisfied when a statute presently applies only to one entity.  Id. at 471-72; see also Communist Party of U.S. v. Subversive Activities Control Bd., 367 U.S. 1, 88 (1961).  In so doing, the Court explained that although the statute at issue, the Presidential Recordings and Materials Preservation Act, applied at that time only to President Nixon's files, the statute was open-ended and would apply to the files of future presidents, and for that reason, it was not a bill of attainder.  Id. at 472; see also United States v. Brown, 381 U.S. 437, 461 (1965) (explaining that rules of general applicability do not constitute bills of attainder).  The same is true of subsections (M) and (N); they can apply to an unlimited number of additional handlers who would have monthly route dispositions of over three million pounds of milk (either in Order 131 or for inter-region milk dispositions).  Due to that open-ended nature, like the statute at issue in Nixon, the MREA is not a bill of attainder.

Next, plaintiffs advocate the use of an 'easily ascertainable' method to determine whether the specificity prong is satisfied.  While not referring by name to that standard, that is what defendant applied in its opening brief.  When the Supreme Court first articulated the 'easily ascertainable' standard, it did so where legislation specifically identified three persons by name for punishment.  United States v. Lovett, 328 U.S. 303, 305 n.1, 315 (1946).  Moreover, the

Supreme Court articulated the words 'easily ascertainable' only after an examination of

precedents that had invalidated legislation on bill of attainder grounds because that legislation

punished past conduct (support for the confederacy during the Civil War).  Id. at 315 (discussing

Cummings v. Missouri and Ex Parte Garland); see also Cummings v. Missouri, 71 U.S. 277, 332

(1867); Ex parte Garland, 71 U.S. 333, 374-77, 381 (1867).  Thus, from those cases it is clear

that for legislation to constitute a bill of attainder it must either identify a person by name or by

an immutable characteristic, such as past conduct.  See generally Am. Commc'ns Ass'n v.

Douds, 339 U.S. 382, 413 (1950) (explaining that the previous invalidations occurred where the

legislatures sought to impose punishments "for past actions").  As pointed out in defendant's

opening brief, and not rebutted, modern case law accords with these principles by rejecting bill of

attainder challenges where the legislation imposes a regulatory condition that can be avoided.

See, e.g., Am. Commc'ns Ass'n, C.I.O. v. Douds, 339 U.S. 382, 414 (1950); WMX Techs., Inc.

v. Gasconade County, Mo., 105 F.3d 1195, 1202 (8th Cir. 1997); Recreational Devs. of Phoenix,

Inc. v. City of Phoenix, 83 F. Supp. 2d 1072, 1098 (D. Ariz. 1999); see generally 16B American

Jurisprudence § 676 ("Specificity may take the form of a description of past conduct rather than

the naming of an individual or group, but a description in terms of present or future conduct does

not satisfy the specificity element.").  Thus, because subsections (M) and (N) do not legislate

based on conditions beyond plaintiffs' control, but rather based on economic output, which can

be changed, subsections (M) and (N) do not satisfy the specificity prong, and cannot be bills of

attainder.[3]

---

[3]  Nor does plaintiffs' citation to Foretich v. United States, 351 F.3d 1198 (D.C. Cir. 2003), change these results.  The child-custody law at issue in Foretich was limited to cases "pending" in D.C. Superior Court, see id. at 1207, and thus did not apply to an open-ended set of people.

2.    **The MREA Does Not Inflict a Legislative Punishment.**

Subsections (M) and (N) are permissible legislative regulations of economic markets and do not inflict a legislative punishment under any of the three relevant factors.

a.    **Historical Analysis of Punishment.**

The MREA does not constitute a bill of attainder under the historical analysis of punishment for three reasons: (i) the MREA is a classic economic regulation since it governs activities not persons; (ii) plaintiffs have the ability to avoid the effects of the MREA by altering their business operations; and (iii) the MREA does not condemn plaintiffs or subject them to a public reprimand.  (Mem. in Supp. at 29-30.)  Plaintiffs respond by arguing that the MREA imposes severe economic burdens, sufficient to constitute a punishment by historical standards. (Mem. in Opp. at 14-18.)  Plaintiffs concede that the MREA does not create a badge of infamy, but then attempt to minimize the significance of this historical consideration.  (Id. at 15.)  None of those arguments demonstrates that the MREA constitutes a legislative punishment in the historical sense.

Plaintiffs argue that they experience severe economic burdens as a result of the MREA. Plaintiffs do not cite a single case invalidating legislation on bill of attainder grounds where the legislation at issue regulated certain economic activity above a threshold amount, but which nonetheless permitted that activity at any level (as the MREA does).  Instead, the case law that plaintiffs cite, as well as the underlying facts of those cases, involve complete "bars" to certain economic activity.  For instance, in the Supreme Court's decision in Selective Service System v. Minnesota Public Interest Research Group, 468 U.S. 841(1984), the statute at issue operated as a complete bar to eligibility for "any form of assistance or benefit provided under title IV of the Higher Education Act of 1965."  Id. at 844.  Similarly, the legislation at issue in BellSouth

12

Corporation v. FCC, 162 F.3d 678 (D.C. Cir. 1998), not only identified BellSouth by name but also presented an immediate bar to BellSouth's ability to engage in in-region long distance services. Id. at 681. The same complete bar was applied in Consolidated Edison Company of New York, Inc., v. Pataki, 292 F.3d 338 (2d Cir. 2002), where the New York legislature completely denied a utility company the ability to recover the clean-up costs from its rate-payers after a radioactive leak. Id. at 344. More tellingly, even on those facts, the Second Circuit in Consolidated Edison was still unconvinced that such a condition satisfied the historical analysis for bill of attainder purposes. Id. at 351.

Even if the MREA were to impose a complete bar to plaintiffs' business line, that alone would not suffice to satisfy the historical test for punishment. See BellSouth, 162 F.3d at 686 ("Furthermore, we note that the Supreme Court has approved other line-of-business restrictions without ever suggesting that the restrictions constituted 'punishment.'"). The historical analysis also includes a determination of "whether there is a rational connection between the restriction imposed and a legitimate non-punitive purpose." Foretich, 351 F.3d at 1219; see also Selective Serv., 468 U.S. at 853-54 (requiring an examination of "whether the challenged statute can be reasonably said to further nonpunitive goals"). And, as explained in defendant's opening brief (Mem. in Supp. at 39-41.), there are legitimate non-punitive reasons for the MREA. For instance, by broadening the federal regulation of the dairy industry in Arizona, the MREA promotes orderly marketing conditions and regulatory equity – both of which are non-punitive goals.

Plaintiffs also argue that even if they scaled back production to avoid regulation under the MREA, that would be a punishment. Plaintiffs cite no case for this proposition. And, plaintiffs' contention does not comport with precedent such as the Supreme Court's holding in Selective

13

Service.  There, a statute that perpetually provided the ability to avoid its effects through changed conduct, was not considered a punishment in the historical sense.  Selective Serv., 468 U.S. at 853 ("A statute that leaves open perpetually the possibility of qualifying for aid does not fall within the historical meaning of legislative punishment.").  More tellingly, if plaintiffs' argument were true – that compliance with the statute could be a punishment on its own – then the statute at issue in Selective Service most certainly would have been considered a punishment because there compliance with the statute meant registering for the draft and risking total loss of the ability to pursue a profession of one's own choice (as well as the prospective loss of many other liberties through active military service).  Plaintiffs' argument is additionally problematic because it equates any legislative attempt to regulate business practices with a punishment.  Under that understanding, there would be no legitimate legislative policy, all regulatory legislation would automatically be viewed as punishment.  Cf. Fleming v. Nestor, 363 U.S. 603, 614 (1960) (explaining that where the legislative concern is activity or status, the legislation is not a punishment).

Finally, plaintiffs concede that the MREA does not create a badge of infamy, but then suggest that under Foretich, public reprimand or condemnation is merely an aggravating factor to be considered in the bill-of-attainder analysis.  (Mem in Opp. at 15.)  Such an interpretation belies the thrust of the D.C. Circuit's historical analysis in Foretich.  The D.C. Circuit never referred to the badge of infamy as an "aggravating factor."  To the contrary, the D.C. Circuit underscored that the focus of the historical analysis is on legislation that carries a badge of infamy:

> While the prohibition against bills of attainder has evolved far beyond the original context of capital sentences, ***it continues to focus on legislative enactments that 'set a note of infamy' on the persons to whom the statute applies.***

14

351 F.3d at 1220 (emphasis added).  Thus, unlike the statute at issue in <u>Foretich</u>, where the legislature essentially determined that Dr. Foretich criminally sexual abused his daughter, the MREA imposes no such badge of infamy on the Hettingas, Sarah Farms, or GH Processing.

       **b.    Functional Analysis of Punishment.**

The MREA does not function as a punishment, but rather as part of economic pooling regulations, common in the milk industry since the 1930s.  As evidence of its regulatory intent, defendant identified at least two non-punitive purposes associated with the MREA: to ensure orderly marketing conditions and to promote regulatory equity.  (Mem. in Supp. 30-32, 39-42.) In response, plaintiffs claim that regulatory burden of the MREA "creates an extraordinary imbalance of harms specific to plaintiffs that overwhelm and alleged non-punitive purpose." (Mem. in Opp. at 21.)  That conclusory statement is in sharp contrast to USDA's regulatory findings that concluded that producer-handlers with monthly route distributions above three million pounds "significantly affect the blend price received by producers," and that such entities "have and use a pricing advantage that cannot be overcome by fully regulated handlers."  *Milk in the Pacific Northwest and Arizona-Las Vegas Marketing Areas; Final Decision on Proposed Amendments to Marketing Agreement and to Orders*, 70 Fed. Reg. 74166, 74186, 74187 (Dec. 14, 2005).[4]

Plaintiffs also argue against the presumptive deference given to federal statutes by citing the <u>Foretich</u> decision.  (Mem. in Opp. at 18-20.)  In that decision, the D.C. Circuit reviewed two Supreme Court cases (<u>Nixon</u> and <u>Selective Service</u>) as part of its functional analysis of

---

[4]  In even sharper contrast to plaintiffs' arguments on the disproportionate burden, USDA concluded that the producer-handler exception should be phased out at 150,000 pounds of monthly route distribution, but adopted the threshold of three million pounds because that was the amount noticed for consideration.  <u>Id.</u> at 74186.

punishment.  <u>Foretich</u>, 351 F.3d at 1221.  After that review, the D.C. Circuit concluded that the

pieces of legislation at issue in those cases did not function as punishments because they served

legitimate government goals and employed rational means to achieve those goals.  <u>Id.</u>  Consistent

with the D.C. Circuit's reasoning, the MREA does not function as a bill of attainder because, as

explained in defendant's opening brief (Mem. in Supp. at 30-32, 39-42), the MREA's terms are

a rational means of promoting orderly milk markets and furthering regulatory equity.  Plaintiffs

also rely on the <u>Foretich</u> court's explanation that "if there exists an extraordinary imbalance

between the burden imposed and the alleged non-punitive purpose, and if the legislative means

do not appear rationally to further that alleged purpose, then the statute does not escape

unconstitutionality merely because the Government can assert purposes that superficially appear

to be non-punitive."  <u>Id.</u> at 1223.  That principle has no application here.  The burden on the

plaintiff in <u>Foretich</u> involved a judgment by the legislature that the plaintiff was guilty of

"horrific" acts of child sexual abuse.  <u>Id.</u>  In contrast, the MREA does not associate plaintiffs

with any criminal acts whatsoever.  Moreover, the pooling and pricing obligations brought on by

the MREA are the same ones imposed on other handlers in Order 131, and they rationally further

nonpunitive, regulatory objectives, as evidenced in USDA's prior administrative findings.  <u>See</u>

<u>generally</u> 70 Fed. Reg. at 74185-88.

        **c.**       **Motivational Analysis of Punishment.**

To satisfy the motivational analysis factor requires "unmistakably clear evidence of

punitive intent" by the legislature.  <u>See</u> <u>Fleming v. Nestor</u>, 363 U.S. 603, 617 (1960); <u>see also</u>

<u>Selective Serv.</u>, 468 U.S. at 856 n.15; <u>Navegar, Inc. v. United States</u>, 192 F.3d 1050, 1068 (D.C.

Cir. 1999) (requiring "unmistakable evidence of punitive intent" to satisfy the motivational

analysis of legislative punishment).  Plaintiffs have not provided such evidence, and instead fall

back on the inferences in their complaint as to the legislative intent – but those are no substitute

for the actual legislative record, even at the Rule 12(b)(6) stage.  See E.E.O.C. v. St. Francis

Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (explaining that motion to dismiss

may be premised on matters of which judicial notice can be taken).  Moreover, on their face,

plaintiffs' arguments regarding the text and structure of the MREA (Mem. in Opp. at 23-24) still

fall well short of the "unmistakably clear" evidence of the punitive purpose required to invalidate

legislation as a bill of attainder.  The text of the MREA does not mention plaintiffs by name.

Nor does the timing of the MREA prove anything here because the MREA was prospective, and

would have applied in the future regardless of the decision by the Northern District of Texas

denying Sarah Farms's motion for preliminary injunction.  Finally, as set forth in detail in

defendant's opening brief (Mem. in Supp. at 33-36), the legislative record evidences an intent to

close a loophole,[5] to promote fairness and to ensure a level playing field, bearing in mind the

economic realities facing the small producer-handlers.[6]  Such floor statements make it impossible

for plaintiffs to demonstrate "unmistakably clear evidence" of a punitive legislative intent.

### 3. The MREA Is Not a Bill of Attainder Because It Does Not Usurp Judicial Functions.

As its third element, the bill of attainder prohibition prevents legislatures from usurping

judicial functions in two ways:  by denying judicial recourse or by making a legislative

determination of guilt.  See Nixon, 433 U.S. at 468; Brown, 381 U.S. at 454 n. 29; Lovett,

---

[5]  See 152 Cong. Rec. H1149, H1150 (daily ed. Mar. 28, 2006) (statement of Rep. Goodlatte); id. at H1152 (statement of Rep. Cardoza); id. (statement of Rep. Schmidt); id. (statement of Rep. Costa); id. at H1153 (statement of Rep. Gutknect).

[6]  Id. at H1152 (statement of Rep. Goodlate); id. at H1152 (statement of Rep. Cardoza); . (statement of Rep. Schmidt); id. at H1152-53 (statement of Rep. Costa).

328 U.S. at 322-23 (Frankfurter, J., concurring); Cummings, 71 U.S. at 323; see generally Siegel

v. Lyng, 851 F.2d 412, 416 (D.C. Cir. 1988) (explaining the separation of powers rationale for

bill of attainder prohibition).  From their response (Mem. in Opp. at 13-14), plaintiffs do not

claim that the MREA has denied them recourse to the judiciary.  And, in fact they have not been

denied such recourse – the MREA makes no attempt to prevent plaintiffs either from challenging

its provisions or from disputing that they fall within its provisions.  For that reason, plaintiffs can

satisfy the third element only if the MREA contained a legislative determination of guilt, which it

does not.

Plaintiffs' opposition claims that they have been denied judicial process and that no

judicial determination of facts has taken place before they were subjected to onerous regulation.

(Mem. in Opp. at 13; Am. Compl. ¶¶ 40, 45, 46, 49).  These arguments miss the mark – to

constitute a legislative determination of guilt, the legislation must make a specific determination

about plaintiffs and regulate them based on that determination.  See Brown, 381 U.S. at 454 n.29;

Consol. Edison Co. of N.Y., Inc., v. Pataki, 292 F.3d 338, 349 (2d Cir. 2002) ("Another

indispensable element of a bill of attainder is its retrospective focus: *it defines past conduct* as

wrongdoing and then imposes punishment on that past conduct." (emphasis added)).  Yet,

plaintiffs fail to identify any aspect of the MREA that actually determined that they possess

certain characteristics at issue.  To the contrary, the MREA does not identify GH Processing or

Sarah Farms as having monthly distributions of more than three million pounds of fluid milk.

Nor does the MREA state that plaintiffs are guilty or liable for some past offense.  Moreover, no

link exists between the present regulation and plaintiffs' past practices: the terms of

subsections (M) and (N) apply just as much to plaintiffs if plaintiffs had never previously

distributed fluid milk as if plaintiffs distributed seven million gallons of milk each month for the

18

past seven years.  Thus, plaintiffs fail to show that the MREA constituted a legislative determination of guilt or usurped any function reserved for the judiciary.  Consequently, plaintiffs' bill of attainder count should be dismissed.

### C.     Plaintiffs' Equal Protection Count Should Be Dismissed.

Plaintiffs try to preserve their equal protection count by claiming that subsections (M) and (N) have discriminatory effects on them.  (Mem. in Opp. at 26-31.)   At the outset, it should be clarified that the discriminatory effects that plaintiffs claim are nothing more than being subject to the same regulatory pooling and pricing requirements that apply to other handlers.  Plaintiffs' argument also operates under the false legal premise that all legislation that imposes differential effects runs afoul of the Equal Protection Clause.  To the contrary, such classifications "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  Heller v. Doe, 509 U.S. 312, 320 (1993); see Lamers Dairy Inc. v. USDA, 379 F.3d 466, 476 (7th Cir. 2004) ("In cases involving economic or social regulation, so long and distinctions are conceivably rational, the recourse of a disadvantaged entity lies in the democratic process.").  Consistent with these equal protection principles, and as explained above and in defendant's opening brief, subsections (M) and (N) are rational means to further the legitimate government interests in maintaining orderly milk marketing conditions and promoting regulatory equity.  (Mem. in Supp. at 39-41.)  Accordingly, plaintiffs fail to state a claim that the MREA violates the Equal Protection Clause.

### D.     Plaintiffs' Due Process Count Should Be Dismissed.

Similarly, plaintiffs do not provide a basis to prolong the life of their due process claims. In support of that count, plaintiffs argue that they have been deprived of liberty and property interests and that any further legal review is premature.  (Mem. in Opp. at 31-33.)  While

19

defendant disagrees that plaintiffs have sufficiently alleged deprivations of constitutionally

protected liberty and property interests,[7] defendant moved for dismissal on other grounds, which

plaintiffs do not rebut:  (1) plaintiffs received the proper process due for public lawmaking;

(2) the MREA does not impose mandatory punishments; (3) even if due process protections were

triggered here, the MREA survives rational basis review.  (Mem. in Supp. at 42-43.)

Furthermore, as explained above, these legal arguments may be considered at this stage, and on

those grounds, plaintiffs fail to state a due process claim.

### E.    The MREA Does Not Deny Plaintiffs the Ability to Seek Judicial Review of the USDA Regulations.

Plaintiffs' final challenge is that the MREA denies them the ability to seek judicial

consideration of their previous challenge to the USDA regulations.  (Mem in Opp. 27-28, 32-34.)

Plaintiffs are incorrect; the MREA does not deny them the ability to challenge the USDA

regulations.  Tellingly, plaintiffs do not, and indeed cannot, identify any portion of the MREA

that bars their administrative appeal rights.  To the contrary, plaintiffs can still challenge those

regulations after administrative exhaustion and with a corresponding challenge to the MREA.

Significantly, as well, the interruption in plaintiffs' prior litigation regarding the USDA

regulations was plaintiffs' own doing, by virtue of their voluntary dismissal of their challenge to

---

[7] Plaintiffs have no constitutionally protected liberty or property interests at issue here. See generally United States v. Rock Royal Co-op, Inc., 307 U.S. 533, 573 (1939) ("Common funds for equalizing risks are not unknown and have not been considered violative of due process.").  A claim for a constitutionally protected liberty interest arising out of the ability to pursue employment centers around concern for a person's reputation and good name, see Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 572-74 (1972); Jones v. Dep't of Navy, 978 F.2d 1223, 1226 (Fed. Cir. 1992), which plaintiffs do not allege has been harmed here.  To have a protected property interest, a plaintiff must have more than a unilateral expectation of it, he must instead have a legitimate claim of entitlement to it, see Roth, 408 U.S. at 576-77, which again plaintiffs do not have here – as participants in the highly regulated dairy industry, they could hardly have a legitimate entitlement to be free of economic regulation.

the amended federal regulations.  See Hettinga v. Johanns, No. 06-cv-00052 (N.D. Tex. Mar. 30,

2006) (stipulation of dismissal) (copy attached to Mem. in Supp. as Exhibit 2).  Contrary to

plaintiffs' suggestions, the Northern District of Texas made clear that it denied Sarah Farms's

preliminary injunction motion because Sarah Farms failed to allege irreparable injury and to

demonstrate a likelihood of success on the merits (for the reasons presented by USDA in its

briefing, which preceded the passage of the MREA).  Hettinga v. Johanns, No. 06-cv-00052, slip.

op., at 4 (N.D. Tex. Mar. 30, 2006) (copy attached to Mem. in Supp. as Exhibit 1).  Moreover,

the Northern District of Texas explicitly stated that the passage of the MREA was not "outcome-

determinative."  Id. at 4 n.2.  Thus, the passage of the MREA did not bar Sarah Farms from

court; rather it was Sarah Farms that prevented a final decision on the merits in the Texas

litigation by dismissing its own claims.

## CONCLUSION

For the foregoing reasons, in addition to those stated in defendant's motion to dismiss,

the Court does not have subject matter jurisdiction over plaintiffs' action, and plaintiffs fail to

state a claim for relief.  Consequently, defendant's motion to dismiss should be granted.


Dated: March 16, 2007                    Respectfully submitted,

                                         PETER D. KEISLER
                                         Assistant Attorney General

                                         JEFFREY A. TAYLOR
                                         United States Attorney

                                         JAMES J. GILLIGAN
                                         Assistant Branch Director

                                         ___/s/ Peter J. Phipps_____

PETER J. PHIPPS
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 616-8482
Fax: (202) 616-8470
peter.phipps@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C.  20044

Courier Address:
20 Massachusetts Ave., N.W.
Washington, D.C.  20001

Attorneys for Defendant