FILED
JUL 3 1 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HEIN HETTINGA AND ELLEN )
HETTINGA d/b/a SARAH FARMS, *et al.* )
)
Plaintiffs, )
)
v. ) Civil Action No. 06-1637 (RJL)
)
UNITED STATES OF AMERICA, )
)
Defendant. )

## MEMORANDUM OPINION
(July 31, 2007) [#4]

Plaintiffs, Hein and Ellen Hettinga d/b/a Sarah Farms, seek to have this Court declare unconstitutional two provisions of the Milk Regulatory Equity Act of 2006, Pub. L. No. 109-215, 120 Stat. 328 (Apr. 11, 2006) (the "MREA") and to permanently enjoin the application of that statute to plaintiffs. Before this Court is the United States' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. For the following reasons, this Court GRANTS defendant's motion to dismiss for lack of subject matter jurisdiction.

### BACKGROUND

The Agricultural Marketing Agreement Act of 1937 as amended, 7 U.S.C. § 601, *et seq.* (the "AMAA"), empowers the Secretary of Agriculture to regulate "handlers," who are persons who handle agricultural commodities, including milk products. *See id.* § 608c(1)-(2). The purposes of this regulation were to establish and maintain orderly marketing conditions for agricultural commodities, *see id.* § 602(1), to protect consumers of agricultural commodities, *see id.* § 602(2), and to avoid unreasonable fluctuations in

supplies and prices by maintaining an orderly supply of agricultural products, *see id.* § 602(4). The AMAA authorizes the Secretary of Agriculture to establish milk marketing orders to regulate different geographic regions of the country, and to guarantee dairy farmers (*i.e.* "producers") a minimum uniform price for milk sold to handlers. *See id.* §§ 608c(1), (5). Pursuant to the AMAA, the Secretary of Agriculture has issued milk marketing orders for many geographic regions of the United States, including Order 131, which governs the Arizona geographic region. *See, e.g.*, 7 C.F.R. §§ 1131.1-.86 (providing regulations specific to Order 131).

Historically, the pooling and pricing systems established by federal milk marketing orders did not apply to an entity that is both the producer and the handler of the milk, known as a "producer-handler," because such entities were typically small and had little impact on the milk market. *See Edaleen Dairy, LLC v. Johanns*, 467 F.3d 778, 780-82 (D.C. Cir. 2006). However, in February 2006, the Secretary of Agriculture redefined the producer-handler exception for Order 131 (the Arizona geographic region) so that large producer-handlers are no longer exempt from the Order's pooling and pricing requirements. *See* Milk in the Pacific Northwest and Arizona-Las Vegas Marketing Areas; Order Amending the Orders, 71 Fed. Reg. 9430 (Feb. 24, 2006). The USDA concluded that "large producer-handlers have and use a pricing advantage that cannot be overcome by fully regulated handlers [and that this] advantage increases only as producer-handler size increases." 70 Fed. Reg. 74166, 74187 (Dec. 14, 2005).

2

Enacted on April 11, 2006, the MREA amends and supplements the AMAA. *See* Pub. L. No. 109-215, 120 Stat 328 (Apr. 11, 2006). The purpose of the MREA is "[t]o ensure regulatory equity between and among all dairy farmers and handlers for sales of packaged fluid milk." *Id.* At issue in this case are subsections (M) and (N) of Section 2(a) of the MREA (now codified at 7 U.S.C. § 608c(5)(M)-(N)) that place volume limits on the applicability of the "producer-handler exception." Subsection (M) regulates the sale of fluid milk into geographic regions with state-law minimum prices for milk (such as California) by handlers located in federally regulated milk marketing areas (such as Arizona). Under this subsection, milk handlers who import milk into a region governed by state minimum milk prices "shall be subject to all of the minimum and uniform price requirements of a Federal milk marketing order . . . applicable to the county in which the plant of the handler is located . . . ." 7 U.S.C. § 608c(5)(M)(i). Producer-handlers with monthly fluid milk disposition of less than three million pounds are exempted from this rule. *Id.* § 608c(5)(M)(iv). Subsection (N) applies a similar limit of three million pounds of milk per month to the producer-handler exception for the Arizona geographical region (Order 131). *Id.* § 608c(5)(N).

Plaintiffs, Hein and Ellen Hettinga d/b/a Sarah Farms and their family partnership GH Dairy, allege that they own, control, and operate Sarah Farms, which processes and markets more than three million pounds of milk produced from plaintiffs' own farms in the Arizona milk marketing area (Order 131) and a second, independent plant in Yuma,

Arizona that sells all of the milk it processes into California. (Am. Compl. ¶¶ 11-12, 17-17.1.) Plaintiffs further allege that they are the only producer-handler in Order 131 with monthly milk sales over three million pounds. (*Id.* ¶ 17.)

Plaintiffs assert that Section 2(a) of the MREA violates the Bill of Attainder Clause because it "singles out plaintiffs for legislative punishment" for their past conduct. (*Id.* ¶¶ 54-57.) Plaintiffs also allege that the MREA violates the Due Process Clause "by imposing a mandatory statutory punishment upon the operation of their business." (*Id.* ¶ 61.) Finally, plaintiffs argue that Section 2(a) of the MREA denies them equal protection "by specifically singling them out for adverse treatment that is extended to no other producerhandler in any other Milk Marketing area." (*Id.* ¶ 65.)

## ANALYSIS

### A. *Legal Standard*

Defendant brings this Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim, the Court must accept all well-pleaded allegations as true, construing them in the light most favorable to the plaintiff. *See Kalil v. Johanns*, 407 F. Supp. 2d. 94, 96-97 (D.D.C. 2005); *Menkes v. Dept. of Homeland Sec.*, 402 F. Supp. 2d 204, 207 (D.D.C.2005). While the Court must construe the complaint liberally in determining whether the Court has subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), *see Scandinavian Satellite Sys., AS v.*

*Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)), it is still the plaintiff's burden to demonstrate jurisdiction, *Tremel v. Bierman & Geesing, L.L.C.*, 251 F. Supp. 2d 40, 43 (D.D.C. 2003). In resolving a motion to dismiss under Rule 12(b)(1), a court may consider materials outside the pleadings. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997).

**B.  *Lack of Subject Matter Jurisdiction***

The United States argues that plaintiffs' claims are barred because they did not comply with the administrative remedies required for challenges to milk marketing orders. The Agricultural Marketing Agreement Act of 1937 ("AMAA") plainly requires any handler seeking to challenge an order of the secretary related to milk marketing or "the obligations imposed in connection therewith" as being "not in accordance with law," must first exhaust the administrative remedies available through petition to the Secretary of Agriculture.[1] 7 U.S.C. § 608c(15)(A) ("Section 15(A)"). It is well-established in our Circuit that this exhaustion requirement is mandatory, and a failure to comply will result in dismissal. *United States v. Ruzicka*, 329 U.S. 287, 294 (1946) ("And so Congress has provided that the remedy

---

[1] The Agricultural Marketing Agreement Act of 1937 ("AMAA") states:

> Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom.

7 U.S.C. § 608c(15)(A).

5

in the first instance must be sought from the Secretary of Agriculture."); *Edaleen Dairy*, 467 F.3d at 785 ("Consistent with this long line of cases, we hold that the AMAA's administrative appeal process is a mandatory procedure that handlers must follow prior to seeking judicial review of a milk marketing order."); *Hershey Foods Corp. v. Dep't of Agric.*, 293 F.3d 520, 526-27 (D.C. Cir. 2002) (upholding dismissal of case where plaintiff did not exhaust the mandatory Section 15(A) administrative remedies).

     Plaintiffs' claims here are subject to this mandatory exhaustion requirement because they challenge the "obligations imposed in connection" with a milk marketing order brought on by the enactment of subsections (M) and (N). The MREA itself contains no requirement that plaintiffs must pay into the pricing pool, rather, the MREA requires an order by the Secretary to be effective. Milk Regulatory Equity Act of 2005, 109 P.L. 215, 120 Stat. 328 (April 11, 2006), codified at 7 U.S.C. § 608(c)(5)(N) (stating that in order to "accomplish the expedited implementation of these amendments . . . the Secretary of Agriculture shall include in the pool distributing plan provisions of each Federal milk marketing order . . . a provision that a handler described in subparagraph (M) of such section, . . . will be fully regulated by the order in which the handler's distributing plant is located"). Thus, in response to the MREA, the Secretary hypothetically could have terminated the Arizona-Las Vegas Order, essentially rendering the MREA ineffective against Sarah Farms, but, instead, the Secretary reissued the order with amendments. Milk in the Northeast and Other Marketing Areas, 71 Fed. Reg. 28248, 28249 (May 16, 2006). Accordingly, because the MREA cannot be

implemented as to plaintiffs without an order by the Secretary, any challenge to the validity of the MREA is essentially a challenge to that order by the Secretary, and, therefore, the mandatory exhaustion requirement of Section 15(A) applies.

Moreover, our Circuit Court has recently held that producer-handlers, such as plaintiffs, must first exhaust their administrative remedies pursuant to Section 15(A) before bringing an action in federal court. *Edaleen Dairy*, 467 F.3d 778. In that case, a large producer-handler operating in the Pacific Northwest challenged the decision by the Secretary that lifted the exemption for the pricing and pooling requirements for large producer-handlers in the Pacific Northwest and Arizona-Las Vegas areas. The *Edaleen* court explicitly held that the exhaustion of administrative remedies required by the AMAA is mandatory and cannot be excused. *Edaleen*, 467 F.3d at 784-85 (citing *Hershey Foods*, 293 F.3d 520; *Am. Dairy of Evansville v. Bergland*, 627 F.2d 1252 (D.C. Cir 1980); *Benson v. Schofield*, 236 F.2d 719 (D.C. Cir. 1956)).

Finally, plaintiffs argue that they do not have to exhaust their administrative remedies because the Secretary has no further expertise than this Court in interpreting the constitutionality of the statute. However, the Supreme Court has held that even when bringing constitutional challenges to an order by the Secretary pursuant to the AMAA, a handler must first exhaust his administrative remedies with the Secretary. *Ruzicka*, 329 U.S. at 294 ("Even when they are formulated in constitutional terms, they are questions of law arising out of, or entwined with, factors that call for understanding of the milk industry. And

so Congress has provided that the remedy in the first instance must be sought from the Secretary of Agriculture."). Accordingly, plaintiffs here must exhaust their mandatory administrative remedies before they may seek relief from this Court. Having failed to do so, this Court lacks jurisdiction and hereby dismisses plaintiffs' amended complaint.

## CONCLUSION

For the foregoing reasons, this Court GRANTS defendant's Motion to Dismiss plaintiff's claims for lack of subject matter jurisdiction. An appropriate Order consistent with this ruling accompanies this Opinion.

RICHARD J. LEON
United States District Judge