# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HEIN HETTINGA AND ELLEN HETTINGA d/b/a SARAH FARMS,**<br><br>**and**<br><br>**GH Dairy d/b/a GH Processing**<br><br>                          **Plaintiffs,**<br>      **v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>                          **Defendant.** | **Case No. 06-CV-1637 (RJL)** |

# MEMORANDUM IN SUPPORT OF
# PLAINTIFFS' MOTION TO ALTER OR AMEND
# JUDGMENT DISMISSING THE COMPLAINT

ALFRED W. RICCIARDI
(Arizona Bar No. 009547)
Hebert Schenk P.C.
4742 N. 24th Street, Suite 100
Phoenix, Arizona 85016
(602) 248-8203

JOHN F. COONEY
(D.C. Bar No. 936336)
NANCY S. BRYSON
(D.C. Bar No. 913673)
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4812

August 14, 2007

Counsel for Plaintiffs

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ......................................................................................................... ii

Standard of Review ........................................................................................................ 4

Argument ........................................................................................................................ 5

I.     THE COURT PREMISED ITS DISMISSAL ON FACTS NOT
PLED AND INFERENCES INCONSISTENT WITH THE
PLEADINGS, AND IT MISINTERPRETED THE MREA, WHICH
GIVES THE SECRETARY OF AGRICULTURE NO
DISCRETION IN IMPLEMENTING ITS TERMS ................................... 5

     A.     The Very Language of the MREA Establishes that
Congress Carefully Articulated the Mandatory Imposition
of Minimum Price Requirements on the Hettingas' Dairy
Operations ..................................................................................... 6

     B.     The Actions of the Department of Agriculture in Implementing
the MREA Confirm that Congress Granted the Secretary No
Discretion ...................................................................................... 9

II.     THE COURT ERRED IN HOLDING THAT SECTION 15(A) IS A
JURISDICTIONAL EXHAUSTION REQUIREMENT .......................... 12

Conclusion ...................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) .................................................................. 13

*Association of Civil Technicians v. FLRA*, 22 F.3d 1150 (D.C. Cir. 1994) ........................ 8

*Atlantic City Elec. Co. v. FERC*, 295 F. 3d 1 (D.C. Cir. 2002)........................................... 12

*Atlantic States Legal Found. v. Karg Bros., Inc.*,
841 F. Supp. 51 (N.D.N.Y. 1993)......................................................................................... 4

*\*Avocados Plus v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004) ....................... 13, 14, 15, 16

*Brensdel v. Office of Fed. Housing Enterprise Oversight*, 339 F. Supp. 52
(D.D.C. 2004) ...................................................................................................................... 11

*Brown v. Tomlinson*, 462 F. Supp. 2d 16 (D.D.C. 2006) ..................................................... 4

*Chevron U.S.A., Inc. v. Nat'l Res. Def. Council*, 467 U.S. 837 (1984) ....................... 11, 12

*Danziger v. Ford Motor Co.*, 402 F. Supp. 2d 236 (D.D.C. 2005) ...................................... 4

*Department of Transportation v. Public Citizen*, 541 U.S. 752 (2004) .............................. 9

*Edaleen Dairy, LLC v. Johanns*, 467 F.3d 778 (D.C. Cir. 2006) ................................. 12, 15

*Firestone v. Firestone*, 76 F. 3d 1205 (D.C. Cir. 1996) ................................................... 4, 5

*Klayman v. Judicial Watch, Inc.*, 2007 WL 1034936 (D.D.C. April 3, 2007)..................... 5

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ................. 8

*Linsday v. United States*, 448 F. Supp. 2d 37 (D.D.C. 2006)............................................. 13

*Lopez v. Davis*, 531 U.S. 230 (2001).................................................................................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................................... 6

*McCarthy v. Madigan*, 503 U.S. 140 (1992) ................................................................. 13, 16

*\*National Ass'n of Home Builders v. Defenders of Wildlife*, __U.S.__,
127 S. Ct. 2518 (2007) ............................................................................................... 3, 4, 8, 9

*United States v. Ruzicka,* 329 U.S. 287 (1946).............................................................14, 15

*Weinberger v. Salfi,* 422 U.S. 749 (1975) ........................................................................13

## CONSTITUTIONAL AND STATUTORY AUTHORITIES

Bill of Attainder Clause, Article I, § 9 .........................................................................1, 3

Milk Regulatory Equity Act, Pub. L. No. 109-215, 120 Stat. 328 (2006) .................*passim*

       Section 2(a)...........................................................................................................6, 7

       Section 2(b)...............................................................................................................7

       Section 2(c)...............................................................................................................7

       Section 2(d)...............................................................................................................7

       7 U.S.C. § 608c(5)(M)............................................................................................7

       7 U.S.C. § 608c(5)(N) ............................................................................................6

       7 U.S.C. § 608c(11)................................................................................................7

       7 U.S.C. § 608c(15)(A) .............................................................................12, 13, 14

       7 U.S.C. § 608c(16)..............................................................................................10

       7 U.S.C. § 608c(19)................................................................................................9

7 U.S.C. § 7806 .............................................................................................................14

28 U.S.C. § 1331 .............................................................................................................5

## OTHER AUTHORITY

71 Fed. Reg. 25495 (May 1, 2006)...................................................................................10

Black's Law Dictionary .....................................................................................................8

Random House Dictionary ..................................................................................................8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **HEIN HETTINGA AND ELLEN HETTINGA** | ) | |
| **d/b/a SARAH FARMS,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **GH Dairy d/b/a GH Processing** | ) | **Case No. 06-CV-1637 (RJL)** |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO ALTER OR AMEND
JUDGMENT DISMISSING THE COMPLAINT

In considering a Rule 12(b)(1) Motion to Dismiss, a court must assume as true all well-pled facts and draw all reasonable inferences in favor of the Plaintiff. But in dismissing this action, the Court ignored the fact that the Hettingas challenged the actions of Congress that violated their Constitutional rights and instead treated this suit as a challenge to a marketing order issued by the Secretary of Agriculture. The Court based its dismissal solely on a "hypothetical," but utterly unrealistic, potential reaction by the Secretary to passage of the Milk Regulatory Equity Act, Pub. L. No. 109-215, 120 Stat. 328 (2006). Accordingly, this Court must reconsider its dismissal order to avoid manifest injustice and to correct a clear legal error in its analysis, as demonstrated by a June 2007 decision by the U.S. Supreme Court.

The Amended Complaint alleged that Congress violated the Hettingas' rights guaranteed by the Bill of Attainder Clause, as well as the equal protection and due process clauses of the Fifth Amendment, when it passed the MREA. Despite plaintiffs' plainly stated allegations

challenging the MREA on constitutional grounds, the Court concluded that "any challenge to the validity of the MREA is essentially a challenge to [a milk marketing] order by the Secretary. . . ." and that Hettingas can only challenge the "obligations imposed in connection" with a milk marketing order, rather than the MREA itself. (July 31, 2007 Memorandum Opinion at 6-7). On that basis, the Court held that exhaustion of the administrative process applicable to milk marketing orders is required before plaintiffs may pursue their constitutional claims in court, and dismissed the case.

The Amended Complaint alleged: "Plaintiffs bring this suit as a facial challenge to the constitutionality of the MREA, and not as a challenge to the terms of any Federal Milk Marketing Order administered by USDA . . . ." (Amended Complaint at ¶ 10.2). In opposition to the Government's Motion to Dismiss, the Hettingas argued (Opp. at 43-44) that their challenge ran directly to the statutory requirements that Congress adopted; that the obligations imposed on the Secretary by the MREA were mandatory and left him with no discretion and nothing to decide; and that all the Secretary had done was to enter a ministerial order that implemented the provisions of the statute.

But the Court concluded that, "in response to the MREA, the Secretary hypothetically could have terminated the Arizona-Las Vegas Order, essentially rendering the MREA ineffective against Sarah Farms . . . ." (July 31, 2007 Memorandum Opinion at 7) (emphasis added). In reaching this conclusion, the Court erred as a matter of law, because it ignored the facts actually pled by the Hettingas; it drew conclusions adverse to the allegations in the Amended Complaint; it ignored the language of the claims which alleged improper actions by Congress, not the Secretary; and it ignored the literal language of the MREA, which imposed mandatory punishments upon plaintiffs even if a ministerial action of the agency were necessary for

execution of the punishment. The MREA repeatedly uses the phrase "shall be" to mandate imposition of explicit regulatory requirements on plaintiffs, and its use of that phrase imposed "discretionless obligations" on the Secretary of Agriculture. National Ass'n of Home Builders v. Defenders of Wildlife, ___ U.S. ___, 127 S. Ct. 2518, 2531 (2007).

As the Complaint clearly alleges, the Hettingas have challenged the statutory provisions of the MREA, and not objected to the ministerial step taken by the Secretary to implement the statute. The operation of the Bill of Attainder Clause is not defeated because Congress directed a subordinate agent to carry the punishment into effect. The Bill of Attainder Clause surely would be violated if the Legislative Branch were to direct an executioner to inflict capital punishment on a person it had found guilty of a crime, as had been the practice of the British Parliament which the Founding Fathers intended to prevent through adoption of Article I, § 9. The situation is no different here, where Congress has mandated that the Secretary carry out its prescribed punishment against the Hettingas. As the Supreme Court held in National Ass'n of Home Builders, "an agency cannot be considered the legal 'cause' of an action that it has no statutory discretion *not* to take." 127 S. Ct. at 2535 (emphasis in original).

Further, the Court premised its dismissal order on the basis that it lacked subject matter jurisdiction over a challenge to a federal milk marketing order before administrative remedies have been exhausted. Even if the Court were correct that the Hettingas have challenged a marketing order rather than the MREA, a careful examination of the administrative exhaustion language in the Agricultural Marketing Agreement Act ("AMAA"), Supreme Court precedent, and the case law in this Circuit require a conclusion that exhaustion is non-jurisdictional.

**Standard of Review**

A motion under Rule 59(e) may be granted when the moving party identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Here, the Court has premised its dismissal order on conclusions inconsistent with the facts pled in the Amended Complaint, a misunderstanding of the nature of the Hettingas' claims, and a misunderstanding of the regulatory scheme. In addition, requiring administrative exhaustion where the Hettingas are not challenging agency action would result in manifest injustice to them.

"Clear error" encompasses improper application of legal standards or a mistake of fact. See, e.g., Brown v. Tomlinson, 462 F. Supp. 2d 16, 18-19 (D.D.C. 2006) (court reassessed its interpretation of standards underlying administrative exhaustion requirement and reversed its prior determination that requirement had not been met); Danziger v. Ford Motor Co., 402 F. Supp. 2d 236, 240 (D.D.C. 2005) (court determined that its previous interpretation of choice of law issue was incorrect, leading court to grant motion for reconsideration); Atlantic States Legal Found. v. Karg Bros., Inc., 841 F. Supp. 51, 55 (N.D.N.Y. 1993) (upon reexamination, court determined that its previous judgment depended on misunderstanding of regulatory scheme).

The argument on which the Court relied was one of many points presented in shotgun fashion in support of the Motion to Dismiss. The amici alone suggested that the Court could dispose of the case in reliance on the "hypothetical" ability of the Secretary of Agriculture to abolish the entire Arizona-Las Vegas milk marketing order. The matter was not discussed at any length in the briefing and oral argument. Further, the recent decision by the Supreme Court in National Association of Home Builders, which was not available to the Court or the parties at the

4

time the motion was briefed and argued, contradicts the Court's reasoning. Based on this decision, it is clear that the distorted picture of the MREA and the AMAA presented in support of that Motion led the Court to adopt an interpretation of the law that is fundamentally erroneous. When an issue is not fully developed before the matter is decided, the Court may consider supplemental argument on the issue as part of a Rule 59(e) motion. Klayman v. Judicial Watch, Inc., 2007 WL 1034936 at *4 (D.D.C. April 3, 2007). Further, the Court may grant a Rule 59(e) motion where an intervening Supreme Court decision shows that the Court's prior decision was incorrect under controlling law. See Firestone, 76 F.3d at 1208.

## ARGUMENT

I.    **THE COURT PREMISED ITS DISMISSAL ON FACTS NOT PLED AND INFERENCES INCONSISTENT WITH THE PLEADINGS, AND IT MISINTERPRETED THE MREA, WHICH GIVES THE SECRETARY OF AGRICULTURE NO DISCRETION IN IMPLEMENTING ITS TERMS.**

This Court has jurisdiction to consider a civil claim brought against the United States challenging the constitutionality of a federal statute. 28 U.S.C. § 1331. The predicate facts alleged by the Hettingas are sufficient to establish a claim for relief on constitutional grounds, and subject matter jurisdiction is proper in this Court. But in granting the government's motion to dismiss, the Court assumed facts not pled, based its decision on a purely hypothetical but unfounded reaction by the Secretary of Agriculture suggested by the amici, and misinterpreted the mandatory language in the MREA to convert the Hettingas' case into an as-applied challenge to the Arizona milk marketing order, rather than a facial challenge to the constitutionality of the MREA as pled.

The fundamental error resulting from these misapplications and misunderstandings was the Court's conclusion that the Secretary of Agriculture possessed any discretion in carrying out the directives of Congress mandated by the MREA:

5

> Plaintiffs' claims here are subject to this mandatory exhaustion requirement because they challenge the "obligations imposed in connection" with a milk marketing order brought on by the enactment of subsections (M) and (N). . . . Thus, in response to the MREA, the Secretary hypothetically could have terminated the Arizona-Las Vegas Order, essentially rendering the MREA ineffective against Sarah Farms, but, instead, the Secretary reissued the order with amendments.

July 31, 2007 Memorandum Opinion at 6.

On its face, this conclusion is erroneous as a matter of law. The Supreme Court has held repeatedly that determinations of subject matter jurisdiction may not be based on allegations that are "conjectural" or "hypothetical." See e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (federal courts may not base determinations of standing on "conjectural" or "hypothetical" allegations of harm, but only on allegations of "concrete" or "imminent" injury.) Accordingly, the Court erred by assuming a "hypothetical" action by the Secretary to defeat subject matter jurisdiction.

In any event, the Court's decision is inconsistent with the plain language of the MREA.

A.    **The Very Language of the MREA Establishes that Congress Carefully Articulated the Mandatory Imposition of Minimum Price Requirements on the Hettingas' Dairy Operations.**

In the MREA, Congress imposed multiple, direct regulatory requirements upon plaintiffs. These obligations are mandatory. The Secretary was given no discretion as to whether these requirements should be imposed or as to their terms.

-- The MREA mandates that producer-handlers in Order 131 selling more than 3,000,000 of bottled milk each month – that is, Sarah Farms – must pay minimum prices for their milk supplies. Section 2(a) adopted a new 7 U.S.C. § 608c(5)(N), which provides that "Notwithstanding any other provision of [7 U.S.C. § 608c], no handler with distribution of Class I milk products in the marketing area described in Order 131 **shall be exempt** during any month

6

from any minimum price requirement ...") (emphasis added).  The Secretary was given no discretion whether to apply this requirement.

    -- The MREA mandates that milk handlers located in federal milk marketing areas must pay minimum prices for milk sales into state-regulated milk marketing areas.  Section 2(a) of the Act adopted a new 7 U.S.C. § 608c(5)(M)(i), which provides that "Notwithstanding any other provision of [7 U.S.C. § 608c], a milk handler described in clause (ii) **shall be subject** to all of the minimum and uniform price requirements of a federal milk marketing order ...") (emphasis added).  The Secretary was given no discretion whether to apply this requirement.

    -- Congress mandated that Nevada must be completely removed from current and future milk marketing areas.  Section 2(b) of the Act adopted a new 7 U.S.C. § 608c(11)(D), which provides that "In the case of milk and its products, no county or other political subdivision of the State of Nevada **shall be within** the marketing area definition of any order issued under this section" (emphasis added).  The Secretary was given no discretion whether to apply this requirement.

    -- Section 2(c) mandates that a milk handler affected by the MREA (i.e. plaintiffs) "**shall comply**" with the requirements of the Department's rules that its "records or facilities" must be made available to the federal milk market administrator.

    -- Finally, Section 2(d) of the MREA provided that "The amendments made by this section **take effect** on the first day of the first month beginning more than 15 days after the date of the enactment of this Act."  The President signed the bill on April 11, 2006, so these obligations automatically took effect on May 1st.  Section 2(d) also mandated that "the Secretary of Agriculture **shall include** in the pool distributing plant provisions of each Federal milk marketing order . . ." a provision that a handler "described in subparagraph (M) of [Section

7

608c(5)], as added by subsection (a) of this section, **will be fully regulated** by the order in which

the handler's distributing plant is located" (emphasis added). Again, the Secretary was given no

discretion whether to apply this requirement.

As the Supreme Court clearly stated in its recent decision in <u>National Ass'n of</u>

<u>Homebuilders</u>, Congress uses the mandatory term "shall" to impose "discretionless obligations"

on an agency. 127 S. Ct. at 2531. The law there at issue stated that EPA "shall approve" a

transfer application unless it determined that a State lacked adequate authority to perform nine

functions specified in the statute. The Court concluded:

> By its terms, the statutory language is mandatory and the list exclusive; if the nine specified criteria are satisfied, the EPA does not have the discretion to deny a transfer. Cf. *Lopez v. Davis*, 531 U.S. 230, 241 . . . (2001) (noting Congress' "use of a mandatory 'shall' . . . to impose discretionless obligations"); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 . . . (1998) (["T]he mandatory 'shall' . . .normally creates an obligation impervious to judicial discretion"); *Association of Civil Technicians v. FLRA*, 22 F.3d 1150, 1153 (D.C. Cir. 1994) ("The word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive"); Black's Law Dictionary 1375 (6th ed. 1990) ("As used in statutes . . . this word is generally imperative or mandatory").

127 S Ct. at 2531-32.

The language of the MREA is similarly imperative. It provides that plaintiffs "shall be

subject" to certain regulations and "shall [not] be exempt" from others. It provides the Secretary

with no discretion whatsoever to make the governing milk marketing order "ineffective" against

plaintiffs. As the Supreme Court stated in <u>National Ass'n of Home Builders</u>, "discretion" is

defined as "the power or right to decide or act according to one's own judgment; freedom of

judgment or choice." 127 S. Ct. at 2535, quoting Random House Dictionary of the English

Language 411 (unabridged ed. 1967).

The mandatory language of the MREA provides the Secretary with no "discretion" in

imposing its terms on plaintiffs. In addition, the Supreme Court has made clear that "where an

agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions, the agency cannot be considered a legally relevant 'cause' of the effect." Department of Transportation v. Public Citizen, 541 U.S. 752, 770 (2004). See National Ass'n of Home Builders, 127 S. Ct. at 2535. Since the MREA imposed mandatory regulatory requirements on the Hettingas' dairy operations and gave the Secretary no discretion to refuse to impose or to vary those obligations, the Department cannot be considered the legal "cause" of these actions under governing Supreme Court precedent. Id.

Accordingly, the Court erred as a matter of law in finding that plaintiffs "challenge the 'obligations imposed in connection ' with a milk marketing order" (July 31, 2007 Memorandum Opinion at 6) and in requiring plaintiffs to pursue the administrative process that the Department makes available for entities that seek to challenge decisions of the Secretary.

The Hettingas therefore properly sued the United States for the actions of Congress to obtain a declaration that the Act infringed on their constitutionally protected rights. The Court erred in determining that it did not have subject matter jurisdiction over their lawsuit.

**B.    The Actions of the Department of Agriculture in Implementing the MREA Confirm that Congress Granted the Secretary No Discretion.**

While changes to milk marketing orders generally are subject to approval by a producer referendum under the AMAA, the MREA expressly provided that "These amendments shall not be subject to a referendum . . . ." Compare 7 U.S.C. § 608c(19) with Section 2(d) of the MREA. The gravity of omitting the referendum cannot be overstated. "These amendments" cannot be altered or amended by the Secretary, producers, or handlers. They were imposed directly by Congress and, because they are mandatory, can be changed only by Congress.

The Department confirmed this point in its implementation of the MREA. On May 1, 2006, the day the MREA took effect by its own terms, the Department published a direct Final

Rule in the Federal Register that complied with the requirement in Section 2(d) that the agency must amend all milk marketing orders to provide that the entities described in the new Section 608c(5)(M) "will be fully regulated." Milk in the Northeast and Other Marketing Areas; Order Amending Orders, 71 Fed. Reg. 25495 (May 1, 2006). The Department issued the Final Rule without notice or an opportunity for public comment because "public procedure is unnecessary and impracticable . . . ." Id. at 25497. The Secretary never claimed to have discretion to refuse to implement the terms of MREA or to terminate the Arizona-Las Vegas marketing order in response to its passage. Rather, in its contemporaneous actions, the Department incorporated the mandatory changes dictated by Congress in the MREA into the orders with exacting precision, nothing more and nothing less.

The Court erred in accepting the arguments of amici that the Secretary could refuse to implement the MREA as to plaintiffs by terminating the marketing orders. This contention is belied by the explicit, non-discretionary statutory language quoted above. Further, this error in interpretation is reinforced by the context in which this purported agency action would have had to occur. The MREA, by its terms, became effective 20 days after its enactment.

But the Court found that the Secretary could have "hypothetically" abolished the marketing orders that had been in operation for decades. Under the provision of the AMAA that authorizes the Secretary to abolish marketing orders, 7 U.S.C. § 608c(16)(A)(i), he would have had to demonstrate that the continuation of the Arizona-Las Vegas order "obstructs or does not tend to effectuate the declared policy of this title . . . ." Such a showing could not have been made in light of the contemporaneous decision by Congress to impose mandatory changes to the Arizona-Las Vegas order "to ensure regulatory equity between and among all dairy farmers and

handlers for sales of packaged fluid milk in federally regulated milk marketing areas . . .," as set forth in the preamble to the MREA. 120 Stat. 328.

The notion that the Secretary could have abolished the Arizona-Las Vegas order before harm was inflicted on plaintiffs on May 1, 2006 was a figment of amici's imagination. Brief of Amici in Support of Government's Motion to Dismiss at 7. This proposition has no grounding in reality. Given the substantive showing and the statutory restrictions that the Secretary would have had to satisfy in order to abolish the Arizona-Las Vegas order, there is not even a "hypothetical" possibility that the Secretary could have taken those steps, "essentially rendering the MREA ineffective against Sarah Farms" because Congress had denied the Secretary any authority to not implement the MREA's terms.

An agency's authority to act is constrained by the specific duties and responsibilities delegated to it by Congress. An agency has no power to act unless and until Congress grants such authority. Chevron U.S.A., Inc. v. Nat'l. Res. Def. Council, 467 U.S. 837 (1984). Accordingly, to accept the amici's contention that the Secretary could have terminated the marketing orders in response to the MREA, there must be language in the MREA that delegates the method and specific means of implementation to the Secretary. But Congress spoke directly to that issue; it explicitly defined the "solutions" to the "problems" of milk regulatory equity and ordered the Secretary to implement those solutions.

A failure to adopt the terms of the MREA as Congress directed would have been an unreasonable, arbitrary and capricious action by the Secretary, for Congress neither explicitly nor implicitly left the Secretary any decision to make. There are no gaps to be filled here. Congress alone determined the terms of the MREA. A refusal to implement its terms would not be entitled to deference under Chevron. See Brensdel v. Office of Fed. Housing Enterprise Oversight, 339

11

F. Supp. 2d 52, 60-61 (D.D.C. 2004). "Thus, even if an agency possesses delegated authority, if 'Congress has directly spoken to the precise question at issue,' we 'must give effect to the unambiguously expressed intent of Congress' and that ends [the] inquiry." <u>Atlantic City Elec. Co. v. FERC</u>, 295 F.3d 1, 8 (D.C. Cir. 2002) (quoting <u>Chevron</u>, 467 U.S. at 842-43). Here, where the delegation to the agency is at most a grant of authority to incorporate an explicit statutory mandate into regulation, any independent act of the Secretary inconsistent with the MREA would be "contrary to law," within the meaning of the Administrative Procedure Act, and entitled to no deference under <u>Chevron</u>.

In sum, because the Hettingas pled their case as a facial challenge to the MREA and because Congress did not delegate any authority to the Secretary with regard to the MREA, the Court committed a clear error of law when it treated this case as a challenge to the Secretary's actions concerning a milk marketing order.

## II.    THE COURT ERRED IN HOLDING THAT SECTION 15(A) IS A JURISDICTIONAL EXHAUSTION REQUIREMENT.

The Court also made a clear error of law when it held that the law in this Circuit requires a handler to exhaust administrative remedies under 7 U.S.C. § 608c(15)(A). Under modern law, the language of Section 15(A) sets forth a non-jurisdictional exhaustion framework.

The Court's reliance on <u>Edaleen Dairy, LLC v. Johanns</u>, 467 F.3d 778 (D.C. Cir. 2006), is misplaced because the procedural posture in <u>Edaleen</u> was markedly different than here. The Hettingas have filed suit to challenge a statute in which Congress directed the Secretary to impose minimum price regulations upon their plants. By contrast, <u>Edaleen Dairy</u> involved a direct challenge to marketing order amendments issued by the Secretary following formal, on-the-record rulemaking. In that case, the Secretary was exercising discretionary authority, had developed an administrative record on which to base his decision and upon which judicial review

could be based, and was not undertaking a ministerial task, as is the case with the MREA. This Circuit concluded in Edaleen that in such a direct challenge to a marketing order, the provisions of 7 U.S.C. § 608c(15)(A) applied.

In addition, the court in Edaleen held that the administrative appeal provisions are mandatory. The Edaleen Court did not, however, engage in the required examination as to whether the AMAA administrative exhaustion provision contains the kind of clear and sweeping language that is required in order to deny an aggrieved handler immediate access to federal court.

The D.C. Circuit has directly construed an administrative exhaustion provision that is virtually identical to the language found in the AMAA, albeit in the context of the Secretary's exercise of his discretion under the Avocado Promotion Act. In Avocados Plus v. Veneman, 370 F.3d 1243 (D.C. Cir. 2004), the court found that administrative exhaustion is non-jurisdictional. The Avocados Plus decision concluded that courts should infer a non-jurisdictional exhaustion requirement, unless "a statute . . . contain[s] sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion." 370 F.3d at 1248 (citing Weinberger v. Salfi, 422 U.S. 749, 757 (1975)). Unless Congress states in clear, unequivocal terms that federal courts may not hear an action unless and until the agency has had an opportunity to review the matter, exhaustion is not a jurisdictional bar to the immediate filing of a lawsuit in federal court. Id. See McCarthy v. Madigan, 503 U.S. 140, 144 (1992).

The methodology and rule set forth in Avocados Plus has subsequently been confirmed by the Supreme Court. See Linsday v. United States, 448 F. Supp. 2d 37, 50 (D.D.C. 2006) (relying upon Arbaugh v. Y & H Corp., 546 U.S. 500 (2006)). The Lindsay decision reiterates the requirement of reviewing courts to "look directly at the text of the statute to determine if the prerequisite it imposes is jurisdictional in character." Id. at 51.

Upon the required review of the avocado promotion exhaustion language, the D.C. Circuit found it to be non-jurisdictional "The Avocado Act contains no comparable 'sweeping and direct' language. It neither mentions exhaustion nor explicitly limits the jurisdiction of the courts. It merely creates an administrative procedure for challenging the Secretary's orders." Avocados Plus, 370 F.3d at 1248. The Avocados Plus court cited as an example of such clear and unequivocal language the provisions of the Social Security Act and Federal Power Act, both of which patently prohibit pre-exhaustion jurisdiction.

Of course, the Avocado Act is not the AMAA. But the administrative exhaustion language in the two statutes is virtually identical. Compare 7 U.S.C. § 608c(15) with 7 U.S.C. § 7806. See Avocados Plus, 370 F.3d at 1249 ("The relevant provisions of the AMAA are nearly identical to those in the Avocado Act.").

Furthermore, as the Avocados Plus court noted, the Supreme Court's discussion in United States v. Ruzicka, 329 U.S. 287 (1946), states that "'Congress did not say in words' that exhaustion was mandatory." Avocados Plus, 370 F.3d at 1249, quoting Ruzicka, 329 U.S. at 292. Yet Ruzicka was the authority on which this Court principally relied to support dismissal of the Amended Complaint. Indeed, Avocados Plus explains how the doctrinal framework for consideration of administrative exhaustion clauses has changed since the decision in Ruzicka.

As stated at oral argument, Ruzicka and all of the other cases cited by the government regarding the propriety of submitting constitutional issues in milk marketing order challenges to administrative proceedings involved attacks on handler-specific payment obligations under the marketing orders, and not facial constitutional challenges to the underlying statute. (Transcript of Motion Conference, Tr. 24-25). Despite a question by the Court, the government failed to identify a single case in which a direct facial challenge to the constitutionality of a statute was

14

submitted to proceedings before an agency that was without any authority to adjudicate the issue. (Tr. 5). It is true that the Ruzicka opinion contained an observation in dicta that a defense to a milk order enforcement action conceivably might present a constitutional issue. When viewed in the context of jurisdictional versus prudential exhaustion, however, it is clear that the Court saw Section 15(A) as a prudential, rather than mandatory requirement. See Ruzicka, 329 U.S. at 294; Avocados Plus, 370 F.3d at 1249-50.

In Avocados Plus, the court observed that the Supreme Court could not find an explicit exhaustion requirement in the text of the AMAA. 370 F.3d at 1249. The Avocados Plus decision also points out "the limited precedential effect of [Ruzicka's] holding":

> Certainly the recent growth of administrative law counsels against generalizations regarding what is compendiously called judicial review of administrative action. And so we deem it desirable, in a case like this, to hug the shore of the precise problem before us in relation to the provisions of the particular Act immediately relevant.

Avocados Plus, 370 F.3d. at 1250 (citing Ruzicka, 329 U.S. at 295).

Accordingly, the court of appeals concluded that "Certainly, under the modern precedents discussed above, the AMAA's lack of anything close to explicit jurisdictional language would render any exhaustion requirement non-jurisdictional," and that the failure of the Supreme Court to articulate its decision in such terms was attributable to the absence of that doctrinal framework. Avocados Plus, 370 F.3d at 1249-50.

Neither this Court nor the panel in Edaleen examined whether the AMAA exhaustion requirement is jurisdictional or non-jurisdictional. But the court of appeals has stated that the existence of an administrative remedy "automatically triggers a non-jurisdictional exhaustion inquiry" and that "[w]e presume exhaustion is non-jurisdictional unless Congress states in clear unequivocal terms that the judiciary is barred from hearing an action until the administrative

15

agency has come to a decision." Avocados Plus, 370 F.3d at 1248 (internal quotations and citations removed). Had this examination been conducted and the logic of Avocados Plus been applied, the resulting conclusion would be that the requirement in the AMAA is non-jurisdictional in this case, which involves a direct challenge to a requirement imposed by Congress, and not to an implementation action by the Secretary.

Given that the AMAA does not contain the language necessary to deny this Court jurisdiction over an otherwise fully-justiciable federal question, the only inquiry for this Court is to determine if the Hettingas should be prudentially required to exhaust administrative remedies. There are at least two reasons why exhaustion would not serve the interest of justice and would, in fact, create manifest injustice here.

First, the Secretary cannot give the Hettingas the relief they request, because the agency is powerless to declare a statute unconstitutional. Forcing the Hettingas to pursue an administrative appeal before the Secretary's designate cannot result in any remedy to the Hettingas. Second, the Secretary has already had his hands tied by Congress regarding the treatment of the Hettingas. The Secretary cannot change the statute, nor decline to implement its terms or change the regulations implementing its terms. Even if he were inclined to do so, there is no power for the Secretary to change the mandate of Congress.

The non-jurisdictional balancing analysis that the Court must undertake would balance the opposing interests of the Hettingas with the agency's interests favoring exhaustion. Avocados Plus, 370 F.3d at 1251 (citing McCarthy v. Madigan, 503 U.S. 140, 147 (1992)). Subjecting the Hettingas to administrative proceedings would be an extraordinary waste of time, effort, and money. The Secretary has no expertise to contribute to the issue whether the MREA is unconstitutional on its face, for violation of the Bill of Attainder Clause or other constitutional

16

provisions. In addition, under the principle of separation of powers, he has no legal authority as an Executive Branch official to determine that a statute passed by Congress is unconstitutional and refuse to follow it. Accordingly, it would be entirely inappropriate to require exhaustion here. In addition to the time and money expended in a wholly futile administrative challenge, the Hettingas will continue to have to pay to the federal milk marketing order hundreds of thousands of dollars per month while the challenge languishes before an agency that is powerless to grant the relief plaintiffs seek.

### Conclusion

Because the Court has premised its order dismissing the Hettingas' claims on a misreading of the Amended Complaint and/or a misapplication of the facts pled to the claims presented, plaintiffs request that the Court reconsider and modify its July 31, 2007 Memorandum Opinion and, in the interest of justice, vacate its prior order and deny the government's Motion to Dismiss.

In the alternative, plaintiffs request that the Court independently reconsider and review the provisions of the Agricultural Marketing Agreement Act pertaining to administrative exhaustion and conclude that those provisions (1) are non-jurisdictional in nature; and (2) plaintiffs are not required to pursue an administrative proceeding because the Secretary lacks authority to grant the relief requested, to declare an act of Congress unconstitutional and assert that he will not follow it.

Respectfully submitted,

/s/ Alfred W. Ricciardi
ALFRED W. RICCIARDI
(Arizona Bar No. 009547)
Hebert Schenk P.C.
4742 N. 24th Street, Suite 100
Phoenix, Arizona 85016
(602) 248-8203

/s/ John F. Cooney
JOHN F. COONEY
(D.C. Bar No. 936336)
NANCY S. BRYSON
(D.C. Bar No. 913673)
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4812

August 14, 2007                    Counsel for Plaintiffs