UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEIN HETTINGA AND ELLEN HETTINGA d/b/a SARAH FARMS, <br><br>and<br><br>GH Dairy d/b/a GH Processing<br><br>    Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 06-CV-1637 (RJL) |

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO ALTER OR AMEND
JUDGMENT DISMISSING THE COMPLAINT

ALFRED W. RICCIARDI
(Arizona Bar No. 009547)
Hebert Schenk P.C.
4742 N. 24th Street, Suite 100
Phoenix, Arizona 85016
(602) 248-8203

JOHN F. COONEY
(D.C. Bar No. 936336)
NANCY S. BRYSON
(D.C. Bar No. 913673)
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4812

September 11, 2007                                   Counsel for Plaintiffs

**TABLE OF CONTENTS**

Table of Contents ..................................................................................................... i

Table of Authorities ................................................................................................ ii

I.  PLAINTIFFS SATISFY THE REQUIREMENTS FOR GRANT OF RELIEF
    UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e) ........................................3

II. THE COURT ERRED AS A MATTER OF LAW IN RULING THAT THE
    SECRETARY'S NON-DISCRETIONARY IMPLEMENTING ORDER WAS
    THE LEGAL CAUSE OF THE HARMS PLAINTIFFS SUFFERED ........................6

III. THE GOVERNMENT IGNORES AVOCADOS PLUS AND RECENT
     SUPREME COURT CASES DEALING WITH MANDATORY VERSUS
     PRUDENTIAL EXHAUSTION ..............................................................................10

Conclusion ...............................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Avocados Plus, Inc. v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004) ............................... 10, 11

*Consol. Edison Co. v. Pataki*, 292 F.3d 338 (2d Cir. 2002) ................................................. 8

*Does 1-570 v. Bush*, No. 05-313, 2007 WL 2007614 (D.D.C. July 11, 2007) ..................... 5

*Firestone v. Firestone*, 76 F. 3d 1205 (D.C. Cir. 1996) ....................................................... 3

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) ................................................. 8

*In re Extradition of McMullen*, 989 F.2d 603 (2d Cir. 1993) .............................................. 8

*Jung v. Ass'n of Am. Med. Colls.*, 226 F.R.D. 7 (D.D.C. 2005) ........................................... 5

*\*National Ass'n of Home Builders v. Defenders of Wildlife*, __U.S.__,
127 S. Ct. 2518 (2007) ................................................................................................ *passim*

*Public Citizen, Inc. v. Mineta*, 444 F. Supp.2d 12 (D.D.C. 2006) ........................................ 5

*United States v. Ruzicka*, 329 U.S. 287 (1946) ............................................................ 10, 11

## CONSTITUTIONAL AND STATUTORY AUTHORITIES

Bill of Attainder Clause, Article I, § 9 .................................................................................. 8

Milk Regulatory Equity Act, Pub. L. No. 109-215, 120 Stat. 328 (2006) ................. *passim*

    Section 2(a) ..................................................................................................................... 1

    7 U.S.C. § 608c(5)(M) ............................................................................................... 1, 2

    7 U.S.C. § 608c(5)(N) .................................................................................................... 1

    7 U.S.C. § 608c(15)(A) ............................................................................................ 1, 3, 7

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 6

Fed. R. Civ. P. 59(e) ..................................................................................................... 3, 5, 6

Webster's New Collegiate Dictionary (1977 ed.) .................................................................. 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEIN HETTINGA AND ELLEN HETTINGA )<br>d/b/a SARAH FARMS, )<br> )<br>and )<br> )<br>GH Dairy d/b/a GH Processing )<br> )<br>                              Plaintiffs, )<br>           v. )<br> )<br>UNITED STATES OF AMERICA, )<br> )<br>                              Defendant.    ) | Case No. 06-CV-1637 (RJL) |

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO ALTER OR AMEND
JUDGMENT DISMISSING THE COMPLAINT

Plaintiffs Hein Hettinga, Ellen Hettinga and GH Dairy (the "Hettingas") have sued to strike down as unconstitutional an Act of Congress, the Milk Regulatory Equity Act ("MREA"). In an opinion filed on July 31, 2007, this Court dismissed the Hettingas' case for lack of subject matter jurisdiction, concluding that the Hettingas needed to exhaust administrative remedies applicable to challenges to federal milk marketing orders.

The fundamental error in this Court's opinion was its conclusion that the Hettingas' claims are challenges to "obligations imposed in connection with a milk marketing order." (Opinion at 5, quoting 7 U.S.C. § 608c(15)). But, as the government concedes in its response to the Hettingas' Motion to Alter or Amend, "[the Hettingas'] underlying challenge in the litigation is to subjections (M) and (N) of 7 U.S.C. § 608c(5), as added by Section 2(a) of the Milk Regulatory Equity Act of 2006" and not to the Arizona milk marketing order. (Gov't Opp. at 1

(emphasis added)). It is these provisions of the MREA, and therefore not the actions of the Secretary, that "subject plaintiffs to the minimum pricing and pooling requirements of the federal milk marketing order . . . ." (Id.)

The MREA admittedly is not self-executing. But its terms are mandatory. The Secretary of Agriculture may only regulate milk handlers pursuant to the specific enumerated terms of the Agricultural Marketing Agreement Act of 1937 ("AMAA"), including the mandatory requirements imposed by the provisions of the MREA challenged in this lawsuit. See 7 U.S.C. § 608c(5) ("[O]rders shall contain one or more of the following terms and no others."). In fact, the Department's website includes a section entitled "Congressional Mandates," which lists only the regulations implementing the MREA. See http://www.ams.usda.gov/dairy/hearings.htm.

The government and amici sought to transform the obligatory terms of the MREA into the realm of discretionary agency action by suggesting the abstract possibility that the Secretary could have take a highly unlikely, and illegal, response to the MREA – termination of the marketing order that Congress had just specifically amended and targeted at the Hettingas. This was the only way in which the government and the amici could suggest that the Hettingas' facial constitutional challenge to the statute might be thought to resemble a challenge to the ministerial marketing order by which the commands of Congress were implemented.

The Secretary of Agriculture did not, however, have discretion to change in any way the statutory punishments that Congress imposed directly and specifically on plaintiffs. Under these circumstances, the Secretary's actions cannot constitute the "legal cause" of the harms plaintiffs are suffering. National Home Association of Home Builders v. Defenders of Wildlife, ___ U.S. ___, 127 S. Ct. 2518, 2523 (2007). As the government acknowledges in the opening to its response, the Hettingas are subjected to the minimum and uniform price requirements by the

statute, and not by the regulations issued by the Secretary. (Gov't Opp. at 1). Thus, the Court's conclusion that the Hettingas' core challenge is to obligations imposed "in connection with" a non-discretionary, ministerial implementing order rather than to the statute itself constituted a plain legal error that subjects plaintiffs to manifest injustice.

The Hettingas' amended complaint challenges only the Act of Congress, and not the specific terms of the Arizona milk marketing order. The government's acknowledgement that (1) the Hettingas are challenging the statute enacted by Congress and not the terms of a milk marketing order, and (2) the Milk Regulatory Equity Act itself subjects the Hettingas to the minimum and uniform price requirements of the Arizona milk marketing order provides reason enough to grant relief under Fed. R. Civ. P. 59(e) because the Court erred as a matter of law in concluding that the Hettingas' challenge to the MREA itself is really a challenge to a milk marketing order. Because the Hettingas do not challenge the order, they cannot be required to exhaust the administrative remedy of Section 15(A). Therefore, this Court has subject matter jurisdiction over this case, and its judgment should be altered or amended.

## I. PLAINTIFFS SATISFY THE REQUIREMENTS FOR GRANT OF RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e).

Relief may be granted under Rule 59(e) if there has been a change in controlling law or if there is a need to correct a clear error or prevent manifest injustice. See Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Plaintiffs' Opening Memorandum demonstrated that the Court's prior decision was based on a clear legal error, as demonstrated in the recent Supreme Court decision in Home Builders, 127 S. Ct. 2518 (2007). That case reviewed themes from previous decisions and established as a basic principle of federal administrative law a legal standard that "an agency cannot be considered the legal 'cause' of an action that it has no statutory discretion *not* to take." 127 S. Ct. at 2535 (emphasis in original). This holding directly

3

contradicts the Court's holding that the legal cause of the Hettingas' harms is the Secretary's non-discretionary order implementing the mandatory provisions of the MREA.

The government argues that Home Builders is not "controlling law" because "[t]hat case did not involve milk marketing." (Gov't Opp.at 4). However, Home Builders deals directly with the threshold, functional question of legal causation -- whether an agency can be the "legal cause" of an action that is made mandatory by the underlying statute. 127 S. Ct. at 2535. The government has finally acknowledged in its response that the MREA, and not the Arizona Marketing Order, "subjects the plaintiffs to the minimum and uniform price requirements of federal milk marketing orders." (Gov't Opp. at 1).

The resolution of this issue was indispensable to the Court's decision dismissing the lawsuit, and Home Builders has defined the standard that is to be used in resolving this question. That the Supreme Court established the governing principle of administrative law in a case arising under the Clean Water Act and the Endangered Species Act, rather than in a milk marketing case, is irrelevant. Home Builders cuts to the heart of the Court's prior decision and demonstrates that it was wrongly decided.

The government also claims that plaintiffs cannot now rely on Home Builders, because plaintiffs allegedly should have submitted it as supplemental authority in the month between the decision and this Court's ruling. (Gov't Opp. at 5). But the necessity of presenting authority that addresses whether an agency can be deemed to the legal cause of an action over which it had no discretion became apparent only when the Court issued its decision and based its judgment on this ground. Home Builders has now established that the reasoning urged by the government and adopted by the Court was erroneous as a matter of law.

4

The government asserts that Jung v. Ass'n of Am. Med. Colls., 226 F.R.D. 7, 9 (D.D.C. 2005), precludes the Court from considering the Home Builders decision. (Gov't Opp. at 5). Jung, however, is markedly different from this case. There, the plaintiffs filed for relief under Rule 59(e) so that they could amend their complaint to set forth new theories of antitrust liability that they had not raised originally. Here, the Hettingas are not attempting to present new legal theories. Instead, they are presenting new authority which establishes that the Court's decision is based upon an error of law. The Court is fully warranted to exercise its discretion to consider this controlling authority that has been issued after this case was briefed and argued and to grant relief under Rule 59(e) on that basis. See Public Citizen, Inc. v. Mineta, 444 F. Supp.2d 12, 15 (D.D.C. 2006) ("A court has considerable discretion to alter or amend the judgment under Rule 59(e)").

Further, the government argues that the Court's decision is not "manifestly unjust," because the ruling simply delays, but does not absolutely deny, plaintiffs the ability ultimately to obtain judicial review, after the conclusion of an administrative process. (Gov't Opp.at 9-10). However, neither the statute nor the agency rules impose any time limit on these proceedings, which can and regularly do extend over many years. Plaintiffs already are suffering severe prejudice in the form of the confiscatory monthly monetary payments that they must pay into the marketing pool. The onerous payments that plaintiffs would incur during such an indefinite delay would clearly constitute "manifest injustice," especially where the Secretary is merely carrying out a Congressional mandate and can provide no relief to the Hettingas. Likewise, the government's reliance on Does 1-570 v. Bush, No. 05-313, 2007 WL 2007614 (D.D.C. July 11, 2007), is misplaced. (Gov't Opp. at 10). Plaintiffs do not seek to have the Court "simply ignore

the law," but rather ask the Court to apply the governing principle of administrative law established by Home Builders, and draw the conclusions compelled by that decision.

Finally, the government's abstract suggestions that the Secretary's consideration of disputes "in cases such as this" might in general assist subsequent judicial review, ignores the critical factor in this particular case – that plaintiffs have raised only one question, a threshold attack on the constitutionality of the MREA under the Bill of Attainder Clause and the Fifth Amendment. This issue falls exclusively within the institutional competence of Article III courts to decide.

In sum, none of the government's procedural arguments provide any basis for denying plaintiffs the relief they seek under Rule 59(e). The Court has full discretion to grant the requested relief upon a showing that its prior decision was based on a plain legal error. Plaintiffs have demonstrated that the Court's prior decision was erroneous, under the governing standard as clarified by Home Builders, and its July 31, 2007 Order should be vacated.

## II. THE COURT ERRED AS A MATTER OF LAW IN RULING THAT THE SECRETARY'S NON-DISCRETIONARY IMPLEMENTING ORDER WAS THE LEGAL CAUSE OF THE HARMS PLAINTIFFS ARE SUFFERING.

The Amended Complaint alleges that an Act of Congress, the MREA, imposed economic punishment on plaintiffs in violation of the Bill of Attainder Clause and the Fifth Amendment. It alleges that Congress directly amended the regulatory scheme created by the AAMA, expressly required that the Hettingas alone be regulated under the Arizona milk marketing order, and afforded the Secretary of Agriculture no discretion as to whether or how these burdens and obligations must be imposed on them. This litigation has just begun, and in considering the motion to dismiss under Rule 12(b)(1), the Court must accept the Hettingas' allegations as true and draw all inferences in their favor.

6

The government's position is that, notwithstanding the allegations of the Amended Complaint, plaintiffs' threshold constitutional claims fall within the scope of Section 15(A) of the AAMA, which establishes an administrative remedy for parties who seek relief from any milk marketing order issued by the Secretary of Agriculture "or any provision of any such order or ***any obligation imposed in connection therewith*** . . . ." (Gov't Opp. at 3, quoting 7 U.S.C. § 608c(15)(A) (emphasis added)). The government argues that the burdens imposed by the MREA were not self-executing, but necessitated the issuance of a ministerial implementing order by the Secretary, and that the harms of which plaintiffs complain therefore should be considered "obligations imposed in connection with a federal milk marketing order" as to which Section 15(A) applies. (Gov't Opp. at 1; see id. at 4). The government's position is contradicted both by the literal language of the statute and by prior Bill of Attainder cases.

Webster's New Collegiate Dictionary defines "connection" as:"**1**: the act of connecting; the state of being connected as **a:** causal or logical relation or sequence . . . ." Webster's New Collegiate Dictionary 240 (1977 ed.) (emphasis added). Thus, under the literal meaning of the language upon which the government's entire argument is based, in order for Section 15(A) to apply there must be a "causal" relationship between the Secretary's action in issuing a milk marketing order and the harm of which the handler complains. Home Builders establishes that "an agency cannot be considered the legal 'cause' of an action that it has no statutory discretion *not* to take." 127 S. Ct. at 2535 (emphasis in original). Accordingly, applying the Home Builders principle to the language of Section 15(A), the harm of which plaintiffs complain was caused, as a matter of law, by the MREA itself and not by the Secretary's action in issuing a non-discretionary implementing order that carried the Congressional mandate into effect.

The results of the plain language analysis are consistent with the decisions in prior Bill of Attainder Clause cases. As noted in Plaintiffs' Opening Memorandum, the Members of the Legislative Branch who vote to impose unconstitutional punishment on specific individuals do not themselves carry the punishment into effect, but act through agents who implement their commands. For example, during the sixteenth and seventeenth centuries when the British Parliament enacted bills of attainder to inflict the death penalty on persons deemed guilty of seditious act, an executioner, not the members of Parliament themselves, carried out the sentence. See In re Extradition of McMullen, 989 F.2d 603, 604-06 (2d Cir. 1993). Article I, § 9, cl. 3 of the Constitution is focused on prohibiting Congress from enacting such laws. Courts that have upheld Bill of Attainder Clause challenges have enjoined the underlying action by the legislative branch, rather than focusing on the acts of its implementing agent.

For example, in the leading case of Consol. Edison Co. v. Pataki, 292 F.3d 338 (2d Cir. 2002), the day after the Governor approved the law prohibiting the utility from collecting fuel adjustment charges for Indian Point replacement power, the Public Service Commission issued an order that directed the utility to cease collecting those charges immediately. The issuance of this implementation order by the regulatory agency did not deflect the Second Circuit from finding that the offending act was the statute adopted by the New York Legislature that imposed this punishment. Similarly, in Foretich v. United States, 351 F.3d 1198 (D.C. Cir. 2003), the D.C. Circuit found that Congress had violated the Bill of Attainder Clause even though the law requiring dismissal of the pending Morgan-Foretich custody litigation would have been implemented by an order of the D.C. Superior Court, rather than by Congress directly.

Plaintiffs' Opening Memorandum demonstrated that the MREA imposed mandatory obligations upon them (a point the government has now conceded) and that the Court erred in

suggesting that the compulsory nature of these obligations was hypothetically avoidable by the Secretary. The government claims that this analysis is irrelevant to the Court's decision. (Gov't Opp. at 6). However, the July 31, 2007 opinion itself demonstrates that this conclusion was critical to the Court's ruling that the obligations imposed on plaintiffs were imposed by the Secretary's order. Further, the government claims that this discussion was nothing more than an "explanatory hypothetical" that courts routinely use to explain their reasoning. (Id.) That assertion also is inconsistent with the opinion. The Court clearly used the word "hypothetical" in a different sense -- that the agency had certain additional legal authority, although it was highly unlikely to use it. This discussion is thus an integral part of the Court's holding.

On the merits, the Court's decision is incorrect as a matter of law. Under the AAMA, as amended by the MREA, the Secretary had no discretion to avoid imposing on plaintiffs the burdens mandated by the 2006 statute. The Court's suggestion that the Secretary possessed, but was highly unlikely to use, nominal authority to abolish the Arizona Las-Vegas milk marketing order ignores the amendments that the MREA made to the agency's authority with respect to this particular marketing order. The MREA amended the AAMA expressly to eliminate Nevada from the scope of the Arizona-Las Vegas order and to direct that plaintiffs must be regulated under that order, as so modified. Congress thus specifically confirmed the necessary existence of that order and specifically determined its geographic scope. Under these circumstances, the Secretary was required under the AAMA, as amended, to regulate plaintiffs under the order. In the face of this explicit action by Congress, the Secretary did not have even the "hypothetical" authority to abolish the entire order to prevent the regulation of the plaintiffs.

### III. THE GOVERNMENT IGNORES AVOCADOS PLUS AND RECENT SUPREME COURT CASES DEALING WITH MANDATORY VERSUS PRUDENTIAL EXHAUSTION.

The court's decision to mandate administrative exhaustion under Section 15(A) was error. The Hettingas' have explained in their opening memorandum why the exhaustion provisions of the AMAA should be treated as non-jurisdictional, and plaintiffs will not burden the Court with another recitation here.

Contrary to the government's assertion, however, this Court need not ignore or overrule Supreme Court precedent to hold that the Hettingas may directly challenge the Milk Regulatory Equity Act. (Gov't Opp. at 7-8). In fact, the government's reliance on United States v. Ruzicka, 329 U.S. 287 (1946), is overplayed. Rather that the setting forth an absolute requirement of administrative exhaustion in all cases, the Supreme Court's opinion in Ruzicka explained a far more limited context to its holding:

> The Agricultural Marketing Agreement Act is one of the many enactments by which Congress in regulating economic enterprise has divided the duty of enforcement between courts and administrative agencies. But there is the greatest variety in the manner in which Congress has distributed this responsibility. Those who are entitled to speak tell us that the development of the natural sciences has often suffered from premature generalization. Certainly the recent growth of administrative law counsels against generalizations regarding what is compendiously called judicial review of administrative action. And so we deem it desirable, in a case like this, to hug the shore of the precise problem before us in relation to the provisions of the particular Act immediately relevant. One general observation, may, however, be permitted. Both courts and administrative bodies are law-enforcing agencies, utilized by Congress as such. In construing the enforcement provisions of legislation like the Marketing Act, it is important to remember that courts and administrative agencies are collaborative "instrumentalities of justice", and not business rivals.

329 U.S. at 295 (citations omitted). In other words, at the time that the decision was made in 1946, courts did not have the benefit of the precise type of analysis that has emerged over the last

sixty or so years regarding administrative agencies and concepts such as mandatory and prudential exhaustion.

The limited nature of the holding of Ruzicka is set forth in the D.C. Circuit's thoughtful analysis in Avocados Plus, Inc. v. Veneman, 370 F.3d 1243 (D.C. Cir. 2004), and the government and amici do not attempt to rationalize the sweeping reach of Ruzicka that they advocate with the logic of Avocados Plus. Instead, they simply attack the decision as allegedly irrelevant and inapplicable. Careful reading, however, demonstrates that the exhaustion language in the AMAA is non-jurisdictional. The government and amici do not even attempt to explain this important distinction. *See* Plaintiffs' Memorandum in Support at 13-17.

## Conclusion

A motion to alter or amend a judgment under Rule 59(e) provides the Court an opportunity for further reflection on a judgment that it has already rendered where a mistake of law or intervening legal authority warrant additional consideration. In its response to the Hettingas' motion to alter or amend the judgment, the government has acknowledged that the MREA imposes milk pricing and pooling obligations on the plaintiffs. Yet, the Court's judgment was premised on the belief that the Hettingas were challenging obligations imposed in connection with a milk marketing order and that the Secretary was without discretion to impose the obligations in the Milk Regulatory Equity Act and could hypothetically terminate the marketing orders. Further reflection reveals this not to be the case. And the Home Builders decision also establishes that where an agency has no discretion, agency action cannot be the cause of injury.

Accordingly the Hettingas request that the Court amend or alter its judgment dismissing this case.

Respectfully submitted,

/s/ Alfred W. Ricciardi
ALFRED W. RICCIARDI
(Arizona Bar No. 009547)
Hebert Schenk P.C.
4742 N. 24th Street, Suite 100
Phoenix, Arizona 85016
(602) 248-8203

/s/ John F. Cooney
JOHN F. COONEY
(D.C. Bar No. 936336)
NANCY S. BRYSON
(D.C. Bar No. 913673)
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4812

September 11, 2007    Counsel for Plaintiffs