## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **HEIN HETTINGA AND ELLEN HETTINGA d/b/a SARAH FARMS,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action No. 06-1637 (RJL)** |
| **v.** | ) ) | |
| **UNITED STATES OF AMERICA,** | ) ) | |
| **Defendant.** | ) ) ) | |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)

### INTRODUCTION

Plaintiffs request that the Court strike down as unconstitutional two provisions of the Milk Regulatory Equity Act of 2006, Pub. L. No. 109-215, 120 Stat. 328 (Apr. 11, 2006) (the "MREA").  Those provisions are codified at 7 U.S.C. § 608c(5)(M)-(N) and referred to as MREA subsections (M) and (N).  Plaintiffs claim that those provisions violate the Bill of Attainder Clause, the Equal Protection Clause, and the Due Process Clause.  As an initial matter, plaintiff Sarah Farms lacks Article III standing to bring such a challenge.  More substantively, plaintiffs are incorrect; subsections (M) and (N) are fully within the bounds of constitutional legislation.  For those reasons, the complaint should be dismissed for lack of subject matter jurisdiction (as to Sarah Farms) and for failure to state a claim for relief (as to all plaintiffs).

1

The Court lacks subject matter jurisdiction over Sarah Farms because Sarah Farms has not satisfied the traceability and redressability elements of Article III standing. Specifically, despite Sarah Farms's desire to contest the constitutionality of subsection (N)'s cap on the producer-handler exception, the applicable USDA regulations, *see* 7 C.F.R. § 1131.10, which Sarah Farms does not dispute, impose the exact same cap. Thus, regardless of the constitutionality of subsection (N), Sarah Farms would be subject to the cap on the producer-handler exception under the USDA regulations. For that reason, no actual case or controversy exists, and Sarah Farms lacks Article III standing.

Plaintiffs' claims also should be dismissed for failure to state a claim for relief. Plaintiffs' complaint does not sufficiently allege plausible constitutional violations. For that reason, there is no need to postpone the adjudication of these counts until a so-called 'merits stage.'

Subsections (M) and (N) of the MREA do not satisfy any of the elements of a bill of attainder. These subsections are not sufficiently specific since they do not identify plaintiffs by name or by past conduct. Nor do subsections (M) and (N) meet the standards for legislative punishment. They fail under the historical test because they are regulations governing economic activities; because plaintiffs can avoid the effects of the MREA by altering their business operations; and because these subsections do not condemn plaintiffs or subject them to a public reprimand. Likewise, subsections (M) and (N) do not function in a retributive or punitive fashion with respect to plaintiffs. Similarly, the

legislative record is devoid of clear proof that Congress was motivated by a desire to

punish plaintiffs when it enacted subsections (M) and (N).

Plaintiffs also fail to state equal protection and due process claims.

Subsections (M) and (N) are subject only to rationality review, and they easily survive

such review since they further legitimate government goals (ensuring market stability and

promoting regulatory equity) through a reasonable means (reducing the circumstances

under which handlers would be excepted from federal regulation and from making pool

payments).  Nor do plaintiffs have a procedural due process claim since they have no

protected liberty or property interests at stake.

In short, plaintiffs' lawsuit continues to be jurisdictionally deficient and fails to

satisfy the legal requirements for any of the constitutional challenges they bring.

Consequently, the entire complaint should be dismissed.

## ARGUMENT

### I.   Sarah Farms Lacks Standing to Challenge Subsection (N).

Plaintiff Sarah Farms challenges the constitutionality of subsection (N) of the

MREA, which imposes a three-million pound monthly cap on the producer-handler

exception.  Sarah Farms does not challenge, however, the identical monthly cap on the

producer-handler exception imposed by USDA regulation.  See 7 C.F.R. § 1131.10.

Notably, if Sarah Farms would have also challenged this USDA regulation, then it

would have been required to follow the administrative review process, see 7 U.S.C.

§ 608c(15)(A).  Yet, as their appeal in this case demonstrates, see Hettinga v. United

States, 560 F.3d 498 (D.C. Cir. 2009), plaintiffs sought to avoid that administrative review process.  Plaintiffs' decision to abstain from challenging any USDA regulations was critical to the D.C. Circuit's ruling that plaintiffs need not engage in the administrative review process.  See Hettinga, 560 F.3d at 505 (explaining that the exhaustion requirement "plainly is aimed only at marketing orders and attendant obligations, not at challenges to the statute").

Plaintiffs' efforts to avoid administrative review were successful in the D.C. Circuit, but they came at a price.  By bringing a constitutional challenge to subsection (N) – without also disputing the corresponding USDA regulations – Sarah Farms fails to allege an actual case or controversy as required for Article III standing.  Specifically, Sarah Farms does not satisfy the traceability and redressability elements of constitutional standing.  That is so because even if subsection (N) was declared unconstitutional or enjoined, Sarah Farms would still be bound by identical regulatory conditions, and it would not qualify for the producer-handler exception.  For that reason, Sarah Farms's alleged injury – being subject to the monthly cap on the producer-handler exception – cannot be fairly traced to only subsection (N); nor would invalidating subsection (N) redress Sarah Farms's injury because the USDA regulations impose the same monthly cap.  See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Put simply, without challenging both subsection (N) and the USDA regulations, Sarah Farms does not bring an actual case or controversy before the Court.

Sarah Farms argues that it was justified in suing only on the basis of the statute

because subsection (N) took away Sarah Farms's abilities to alter its regulatory status through administrative process and to challenge the legality of the USDA regulations. (Mem. in Opp. at 12-16 (Docket #47)).  Those arguments fail because subsection (N) does not eliminate any recourse that Sarah Farms has.  Sarah Farms can still challenge the USDA regulations through the administrative process and thereafter in the courts.  In fact, Sarah Farms could have done so in this action (after first exhausting administrative remedies); it simply chose not to.

In short, Sarah Farms is governed by both regulation and statute, but to have Article III standing, Sarah Farms must challenge both of those sources of law, which it has not done.

## II.     The MREA Does Not Violate the Constitution, and Plaintiffs' Complaint Should Be Dismissed for Failure to State a Claim for Relief.

As a matter of law, the MREA does not violate the Bill of Attainder Clause, the Equal Protection Clause, or the Due Process Clause.  Therefore, plaintiffs' complaint should be dismissed for failure to state a claim for relief under Rule 12(b)(6).

### A.     Plaintiffs Misconstrue the Appropriate Standard of Review.

The standard of review under Rule 12(b)(6) has recently been clarified by two Supreme Court cases:  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  Plaintiffs fail to address the Iqbal decision in their brief, and they disregard the Rule 12(b)(6) standard for review in three significant respects.

First, plaintiffs repeatedly request delaying the evaluation of the legal sufficiency

of their claims until the so-called 'merits stage.' (Mem. in Opp. at 2, 11, 12, 19, 20, 24, 27, 28, 30, 32, 33, 38, 39, 42.) Beyond signaling the weakness of their claims, plaintiffs' procedural argument ignores the most recent Supreme Court decision on the Rule 12(b)(6) standard, Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In Iqbal, the Supreme Court made clear that the legal sufficiency of a complaint is evaluated at the Rule 12(b)(6) stage through a plausibility standard. Id. at 1949. Under that standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff must present "more than a sheer possibility that a defendant has acted unlawfully" to survive dismissal. Id. By repeatedly advocating that the Court postpone an evaluation of the plausibility of their allegations until the 'merits stage,' plaintiffs are inviting the Court to apply an incorrect standard of review.

Second, plaintiffs' reliance on vague and conclusory statements in the complaint is insufficient. See Twombly, 550 U.S. at 555; ASA Accugrade, Inc. v. Am. Numismatic Ass'n, 370 F. Supp. 2d 213, 215 (D.D.C. 2005). For instance, plaintiffs' assertions that they were denied their procedural due process rights associated with the adjudicatory process (Mem. in Opp. at 21), are legal conclusions "cast in the form of factual allegations," which receive no weight at the Rule 12(b)(6) stage. Kowal v. MCI Commc'ns Corp., Inc., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Put simply, as explained in Twombly, a complaint will fail if it does not contain "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." Twombly,

550 U.S. at 555.

Third, plaintiffs' case is particularly suited to resolution at the 12(b)(6) stage because plaintiffs bring only facial constitutional challenges to the MREA, see, e.g., Pl's Initial Mem. in Opp. at 44 (Docket #14).[1]  Facial challenges are pure questions of law that focus on the specific statutory text and do not require any factual exploration.  See Gen. Elec. Co. v. Johnson, 362 F. Supp. 2d 327, 337 (D.D.C. 2005) ("[A] facial challenge to the text of a statute does not typically require discovery for resolution because the challenge focuses on the language of the statute itself.").  Put another way, because plaintiffs must show that *any* application of the statute is unconstitutional to succeed in a facial challenge, no particular set facts is controlling, discovery is not needed, and there is no reason to postpone adjudication to some later point in time.  See Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 971 (9th Cir. 2003) ("To bring a successful facial challenge outside the context of the First Amendment, 'the challenger must establish that no set of circumstances exists under which the [statute] would be valid.'" (quoting United States v. Salerno, 481 U.S. 739, 745 (1987) (alteration in original))); see also Lamers Dairy Inc. v. USDA, 379 F.3d 466, 473 (7th Cir. 2004). ("Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized.").

---

[1]  Plaintiffs also emphasized that their lawsuit consisted only of facial challenges in their appeal to the D.C. Circuit.  *See* Appellants' Final Opening Brief at 6, 8, 14 (July 22, 2008) in Hettinga v. United States, No. 07-5403 (D.C. Cir.).

B.      **The MREA Is Not a Bill of Attainder.**

As explained in defendant's opening brief (Def's Mot. at 11-20 (Docket #44)), the

MREA does not satisfy any of the requisite elements of a bill of attainder, and plaintiffs'

opposing arguments (Mem. in Opp. at 16-33) fail to satisfy even one of those elements.

1.      **Subsections (M) and (N) of the MREA Are Not Bills of Attainder
        Because the Specificity Element Is Not Satisfied Here.**

Subsections (M) and (N) of the MREA do not satisfy the specificity element of the

bill of attainder analysis.  The specificity element is not met when either of two

conditions is present:  (i) the legislation is open-ended in its applicability; or (ii) the

legislation governs conditions within a person's control, as opposed to immutable

characteristics.  In its motion (Def's Mot. at 12-14.), defendant demonstrated that ***both*** of

those conditions exist here – subsections (M) and (N) are open-ended (other entities

meeting the conditions would be subject to their terms), and they do not regulate based on

conditions beyond plaintiffs' present control, such as past conduct (plaintiffs can change

their business practices to avoid regulation).  Plaintiffs' opposition does not dispute either

of these arguments – plaintiffs apparently concede that subsections (M) and (N) are open-

ended in their applicability that plaintiffs are not regulated based on an immutable

characteristic.  Consequently, plaintiffs cannot satisfy the specificity element, and their

bill of attainder challenge fails on that basis alone.

By way of response, plaintiffs emphasize that subsections (M) and (N) currently

apply only to them, and plaintiffs advocate use of the 'easily ascertainable' test.  (Mem. in

Opp. 17-20.)  While not referring by name to that standard, that is what defendant applied

in its opening brief.  When the Supreme Court first articulated the 'easily ascertainable'

standard, it did so where legislation specifically identified three persons by name for

punishment.  United States v. Lovett, 328 U.S. 303, 305 n.1, 315 (1946).  Moreover, the

Supreme Court articulated the words 'easily ascertainable' only after an examination of

precedents that had invalidated legislation on bill of attainder grounds because that

legislation punished past conduct (support for the confederacy during the Civil War).  Id.

at 315 (discussing Cummings v. Missouri and Ex Parte Garland); see also Cummings v.

Missouri, 71 U.S. 277, 332 (1866); Ex parte Garland, 71 U.S. 333, 374-77, 381 (1866).

Thus, from those cases, it is clear that for legislation to constitute a bill of attainder, it

must either identify a person by name or by an immutable characteristic, such as past

conduct.  See generally Am. Commc'ns Ass'n, C.I.O. v. Douds, 339 U.S. 382, 413 (1950)

(explaining that the previous invalidations occurred where the legislatures sought to

impose punishments "for past actions").  As pointed out in defendant's opening brief, and

not rebutted, modern case law accords with these principles by rejecting bill of attainder

challenges where the legislation imposes a regulatory condition that can be avoided.  See,

e.g., id. at 414; WMX Techs., Inc. v. Gasconade County, Mo., 105 F.3d 1195, 1202 (8th

Cir. 1997); Recreational Devs. of Phoenix, Inc. v. City of Phoenix, 83 F. Supp. 2d 1072,

1098 (D. Ariz. 1999); see generally 16B American Jurisprudence § 676 ("Specificity may

take the form of a description of past conduct rather than the naming of an individual or

group, but a description in terms of present or future conduct does not satisfy the

9

specificity element."). Thus, because subsections (M) and (N) do not legislate based on conditions beyond plaintiffs' control, but rather based on economic output, which can be changed, subsections (M) and (N) do not satisfy the specificity prong, and cannot be bills of attainder.[2]

**2.      The MREA Does Not Inflict a Legislative Punishment.**

Subsections (M) and (N) are permissible legislative regulations of economic markets and do not inflict a legislative punishment under any of the three relevant factors.

**a.      Historical Analysis of Punishment**

The MREA does not constitute a bill of attainder under the historical analysis of punishment for three reasons:  (i) the MREA is a classic economic regulation because it governs activities not persons; (ii) plaintiffs have the ability to avoid the effects of the MREA by altering their business operations; and (iii) the MREA does not condemn plaintiffs or subject them to a public reprimand.  (Def's Mot. at 15-17.)  Plaintiffs respond by arguing that the MREA imposes severe economic burdens, sufficient to constitute a punishment by historical standards.  (Mem. in Opp. at 22-26.)  Plaintiffs concede that the MREA does not create a badge of infamy, but then attempt to minimize the significance

_____

[2] Nor does plaintiffs' citation to <u>Foretich v. United States</u>, 351 F.3d 1198 (D.C. Cir. 2003), and <u>Elgin v. United States</u>, 594 F. Supp. 2d 133 (D. Mass. 2009), change these results.  The child-custody law at issue in <u>Foretich</u> was limited to cases "pending" in D.C. Superior Court, <u>see</u> <u>Foretich</u>, 351 F.3d at 1207, and thus did not apply to an open-ended set of people.  Similarly, the MREA is unlike the statute in <u>Elgin</u>, which legislated based on irreversible past conduct, <u>i.e.</u>, the need to register with Selective Service before age 26. Here, however, plaintiffs may avoid the effects of the MREA simply by changing their business operations.

of this historical consideration.  (Id. at 23.)  As explained below, none of plaintiffs'

arguments demonstrates that the MREA constitutes a legislative punishment in the

historical sense.

Plaintiffs argue that they experience severe economic burdens as a result of the

MREA.  (Mem. in Opp. at 24-26.)  Yet, plaintiffs do not cite a single case invalidating

legislation on bill of attainder grounds where the legislation at issue regulated certain

economic activity above a threshold amount, but which nonetheless permitted that activity

at any level (as the MREA does).  Instead, the case law that plaintiffs cite, as well as the

underlying facts of those cases, involve complete "bars" to certain economic activity.  For

instance, in the Supreme Court's decision in Selective Service System v. Minnesota

Public Interest Research Group, 468 U.S. 841(1984), the statute at issue operated as a

complete bar to eligibility for "any form of assistance or benefit provided under title IV of

the Higher Education Act of 1965."  Id. at 844.  Similarly, the legislation at issue in

BellSouth Corporation v. FCC, 162 F.3d 678 (D.C. Cir. 1998), not only identified

BellSouth by name but also presented an immediate bar to BellSouth's ability to engage

in in-region long distance services.  Id. at 681.  The same complete bar was applied in

Consolidated Edison Company of New York, Inc., v. Pataki, 292 F.3d 338 (2d Cir. 2002),

where the New York legislature completely denied a utility company the ability to recover

the clean-up costs from its rate-payers after a radioactive leak.  Id. at 344.  More tellingly,

even on those facts, the Second Circuit in Consolidated Edison was still unconvinced that

such a condition satisfied the historical analysis for bill of attainder purposes.  Id. at 351.

Finally, the recent ACORN case is of no help to plaintiffs, because the continuing resolution at issue there specified ACORN by name and prohibited ACORN from receiving any funding.  ACORN v. United States, 662 F. Supp. 2d 285, 293 (E.D.N.Y. 2009).  In stark contrast, the MREA does not specify plaintiffs by name, and it permits plaintiffs (and any other handler whose output meets the conditions set forth in the MREA) to continue their operations subject to the pooling and pricing obligations that apply to other regulated handlers.

Even if the MREA were to impose a complete bar to plaintiffs' business line, that alone would not suffice to satisfy the historical test for punishment.  See BellSouth, 162 F.3d at 686 ("Furthermore, we note that the Supreme Court has approved other line-of-business restrictions without ever suggesting that the restrictions constituted 'punishment.'").  The historical analysis also includes a determination of "whether there is a rational connection between the restriction imposed and a legitimate non-punitive purpose." Foretich, 351 F.3d at 1219; see also Selective Serv., 468 U.S. at 853-54 (requiring an examination of "whether the challenged statute can be reasonably said to further nonpunitive goals").  As explained in defendant's opening brief (Def's Mot. at 15, 17-18, 21-22), there are legitimate non-punitive reasons for the MREA.  For instance, by broadening the federal regulation of the dairy industry in Arizona, the MREA promotes orderly marketing conditions and regulatory equity – both of which are non-punitive goals.

Plaintiffs also argue that even if they scaled back production to avoid regulation

under the MREA, that would be a punishment.  (Mem. in Opp. at 24-25.)  Plaintiffs cite

no case for this proposition.  In addition, plaintiffs' contention does not comport with

precedent such as the Supreme Court's holding in Selective Service.  There, a statute that

perpetually provided the ability to avoid its effects through changed conduct was not

considered a punishment in the historical sense.  Selective Serv., 468 U.S. at 853 ("A

statute that leaves open perpetually the possibility of qualifying for aid does not fall

within the historical meaning of forbidden legislative punishment.").  More tellingly, if

plaintiffs' argument were true – that compliance with the statute could be a punishment

on its own – then the statute at issue in Selective Service most certainly would have been

considered a punishment because there compliance with the statute meant registering for

the draft and risking total loss of the ability to pursue a profession of one's own choice (as

well as the prospective loss of many other liberties through active military service).

Plaintiffs' argument is additionally problematic because it equates any legislative attempt

to regulate business practices with a punishment.  Under that understanding, there would

be no legitimate legislative policy; all regulatory legislation would automatically be

viewed as punishment.  Cf. Fleming v. Nestor, 363 U.S. 603, 614 (1960) (explaining that

where the legislative concern is activity or status, the legislation is not a punishment).

Finally, plaintiffs concede that the MREA does not create a badge of infamy, but

then suggest that under Foretich, public reprimand or condemnation is merely an

aggravating factor to be considered in the bill-of-attainder analysis.  (Mem in Opp. at 23.)

Such an interpretation belies the thrust of the D.C. Circuit's historical analysis in

13

<u>Foretich</u>.  The D.C. Circuit never referred to the badge of infamy as an "aggravating factor."  To the contrary, the D.C. Circuit underscored that the focus of the historical analysis is on legislation that carries a badge of infamy:

> While the prohibition against bills of attainder has evolved far beyond the original context of capital sentences, ***it continues to focus on legislative enactments that 'set a note of infamy' on the persons to whom the statute applies.***

 <u>Foretich</u>, 351 F.3d at 1220 (emphasis added).  Thus, unlike the statute at issue in <u>Foretich</u>, where the legislature essentially determined that Dr. Foretich sexually abused his daughter, the MREA imposes no such badge of infamy on plaintiffs.

### b.    Functional Analysis of Punishment

The MREA does not function as a punishment, but rather as part of economic pooling regulations, common in the milk industry since the 1930s.  As evidence of its regulatory intent, defendant identified at least two non-punitive purposes associated with the MREA:  to ensure orderly marketing conditions and to promote regulatory equity.  (Def's Mot. at 17-18, 21-22.)  In response, plaintiffs claim that the regulatory burden of the MREA "create[s] an extraordinary imbalance of harms specific to [p]laintiffs that overwhelm any alleged non-punitive purpose." (Mem. in Opp. at 29.)  That conclusory statement is contradicted by USDA's regulatory findings that concluded that producer-handlers with monthly route distributions above three million pounds "significantly affect the blend price received by producers," and that such entities "have and use a pricing advantage that cannot be overcome by fully regulated handlers." *Milk in the Pacific*

*Northwest and Arizona-Las Vegas Marketing Areas; Final Decision on Proposed Amendments to Marketing Agreement and to Orders*, 70 Fed. Reg. 74166, 74186, 74187 (Dec. 14, 2005).[3]

Plaintiffs also argue against the presumptive deference given to federal statutes by citing the Foretich decision.  (Mem. in Opp. at 27-29).  In that decision, the D.C. Circuit reviewed two Supreme Court cases (Nixon and Selective Service) as part of its functional analysis of punishment.  Foretich, 351 F.3d at 1221.  After that review, the D.C. Circuit concluded that the pieces of legislation at issue in those cases did not function as punishments because they served legitimate government goals and employed rational means to achieve those goals.  Id.  Consistent with the D.C. Circuit's reasoning, the MREA does not function as a bill of attainder because, as explained in defendant's opening brief, the MREA's terms are a rational means of promoting orderly milk markets and furthering regulatory equity.  (Def's Mot. at 17-18, 21-22).

Plaintiffs also rely on the Foretich court's explanation that "if there exists an extraordinary imbalance between the burden imposed and the alleged nonpunitive purpose, and if the legislative means do not appear rationally to further that alleged purpose, then the statute in question does not escape unconstitutionality merely because the Government can assert purposes that superficially appear to be nonpunitive."

---

[3]  In even sharper contrast to plaintiffs' arguments on the disproportionate burden, USDA concluded that the producer-handler exception should be phased out at 150,000 pounds of monthly route distribution, but adopted the threshold of three million pounds because that was the amount noticed for consideration.  70 Fed. Reg. at 74186.

<u>Foretich</u>, 351 F.3d at 1223.  (Mem. in Opp. at 27.)  That principle has no application here.

The burden on the plaintiff in <u>Foretich</u> involved a judgment by the legislature that the

plaintiff was guilty of "horrific" acts of child sexual abuse.  <u>Id.</u>  In contrast, the MREA

does not associate plaintiffs with any criminal acts whatsoever.  Moreover, the MREA's

pooling and pricing obligations are the same ones imposed on other handlers in Order

131, and they rationally further nonpunitive, regulatory objectives, as evidenced in

USDA's prior administrative findings.  <u>See generally</u> 70 Fed. Reg. at 74185-88.

### c.    Motivational Analysis of Punishment

To satisfy the motivational factor requires "unmistakable evidence of punitive

intent" by the legislature.  <u>See</u> <u>Fleming v. Nestor</u>, 363 U.S. 603, 619 (1960); <u>see also</u>

<u>Selective Serv.</u>, 468 U.S. at 856 n.15; <u>Navegar, Inc. v. United States</u>, 192 F.3d 1050, 1068

(D.C. Cir. 1999) (requiring "unmistakable evidence of punitive intent" to satisfy the

motivational analysis of legislative punishment).  Plaintiffs have not provided such

evidence, and instead fall back on the inferences in their complaint as to the legislative

intent.  For instance, plaintiffs cite to their allegation that "the MREA embodied a

Congressional intent to punish the Hettingas." (Mem. in Opp. at 31.)  But those

statements are no substitute for the actual legislative record, and as nothing more than

"labels and conclusions," they fail to survive Rule 12(b)(6) dismissal.  <u>Twombly</u>, 550 U.S.

at 555; <u>see also</u> <u>E.E.O.C. v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C.

Cir. 1997) (explaining that motion to dismiss may be premised on matters of which

judicial notice can be taken).  Moreover, plaintiffs' arguments regarding the text and

structure of the MREA (Mem. in Opp. at 31-32) fall well short of the unmistakable

evidence of the punitive purpose required to invalidate legislation as a bill of attainder.

The text of the MREA does not mention plaintiffs by name.  Nor does the timing of the

MREA prove anything here because the MREA was prospective, and would have applied

in the future regardless of the decision by the Northern District of Texas denying Sarah

Farms's motion for preliminary injunction.  Finally, as set forth in detail in defendant's

opening brief, the legislative record evidences an intent to close a loophole,[4] to promote

fairness and to ensure a level playing field, bearing in mind the economic realities facing

the small producer-handlers.[5]  (Def's Mot. at 18-19; see also Def's Initial Mot. at 33-36

(Docket # 4) (providing the full text of the relevant congressional floor statements)).

Such floor statements make it impossible for plaintiffs to demonstrate the required

unmistakable evidence of a punitive legislative intent.

> **3.     The MREA Is Not a Bill of Attainder Because It Does Not Usurp
>           Judicial Functions.**

As defendant explained in its opening briefing (Def's Mot. at 20), the third bill of

attainder element prevents legislatures from usurping judicial functions in two ways:  by

denying judicial recourse or by making a legislative determination of guilt.  See Nixon,

433 U.S. at 468; Brown, 381 U.S. at 454 n.29; Lovett, 328 U.S. at 322-23 (Frankfurter, J.,

---

[4]  See 152 Cong. Rec. H1149, H1150 (daily ed. Mar. 28, 2006) (statement of Rep.
Goodlatte); id. at H1152 (statement of Rep. Cardoza); id. (statement of Rep. Schmidt); id.
(statement of Rep. Costa); id. at H1153 (statement of Rep. Gutknect).

[5]  Id. at H1152 (statement of Rep. Goodlatte); id. at H1152 (statement of Rep.
Cardoza); . (statement of Rep. Schmidt); id. at H1152-53 (statement of Rep. Costa).

concurring); Cummings, 71 U.S. at 323; see generally Siegel v. Lyng, 851 F.2d 412, 416

(D.C. Cir. 1988) (explaining the separation of powers rationale for bill of attainder

prohibition).

Plaintiffs do not claim that the MREA has denied them recourse to the judiciary.

(Mem. in Opp. at 21.)  In fact, plaintiffs have not been denied such recourse – the MREA

makes no attempt to prevent plaintiffs either from challenging its provisions or from

disputing that plaintiffs fall within its provisions.

Nor does the MREA contain a legislative determination of guilt.  Plaintiffs'

opposition claims that they have been denied judicial process and that no judicial

determination of facts has taken place before they were subjected to onerous regulation.

(Mem. in Opp. at 21; Am. Compl. ¶¶ 40, 45, 46, 49).  These arguments miss the mark.

To constitute a legislative determination of guilt, the legislation must make a specific

determination about plaintiffs and regulate them based on that determination.  See Brown,

381 U.S. at 454 n.29; Consol. Edison Co. of N.Y., Inc., v. Pataki, 292 F.3d 338, 349 (2d

Cir. 2002) ("Another indispensable element of a bill of attainder is its retrospective focus:

*it defines past conduct* as wrongdoing and then imposes punishment on that past

conduct." (emphasis added)).  Yet, plaintiffs fail to identify any aspect of the MREA that

actually determined that they possess certain characteristics at issue.  To the contrary, the

MREA does not identify GH Processing or Sarah Farms as having monthly distributions

of more than three million pounds of fluid milk.  Nor does the MREA state that plaintiffs

are guilty or liable for some past offense.  Moreover, no link exists between the present

regulation and plaintiffs' past practices:  the terms of subsections (M) and (N) apply just as much to plaintiffs if plaintiffs had never previously distributed fluid milk as if plaintiffs distributed seven million gallons of milk each month for the past seven years. Thus, plaintiffs fail to show that the MREA constituted a legislative determination of guilt or usurped any function reserved for the judiciary.  Consequently, plaintiffs' bill of attainder count should be dismissed.

### C.      Plaintiffs' Equal Protection Count Should Be Dismissed.

Plaintiffs try to preserve their equal protection count by claiming that subsections (M) and (N) have discriminatory effects on them.  (Mem. in Opp. at 33-40.) At the outset, it should be clarified that the discriminatory effects that plaintiffs claim are nothing more than being subject to the same regulatory pooling and pricing requirements that apply to other handlers.  Plaintiffs' argument also operates under the false legal premise that all legislation that imposes differential effects runs afoul of the Equal Protection Clause.  To the contrary, such classifications "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320 (1993); see Lamers Dairy Inc. v. USDA, 379 F.3d 466, 476 (7th Cir. 2004) ("In cases involving economic and social regulation, so long as distinctions are conceivably rational, the recourse of a disadvantaged entity lies in the democratic process.").  Consistent with these equal protection principles, and as explained above and in defendant's opening brief, subsections (M) and (N) are rational means to further the legitimate government interests

in maintaining orderly milk marketing conditions and promoting regulatory equity.

(Def's Mot. at 21-24.)  Accordingly, plaintiffs fail to state a claim that the MREA violates

the Equal Protection Clause.

### D.    Plaintiffs' Due Process Count Should Be Dismissed.

Plaintiffs similarly do not provide a basis to prolong the life of their due process

claims.  In support of that count, plaintiffs argue that they have been deprived of liberty

and property interests.  (Mem. in Opp. at 40-41.)

That argument fails because plaintiffs have no constitutionally protected liberty or

property interests at issue here.  See generally United States v. Rock Royal Co-op, Inc.,

307 U.S. 533, 573 (1939) ("Common funds for equalizing risks are not unknown and

have not been considered violative of due process.").  A claim for a constitutionally

protected liberty interest arising out of the ability to pursue employment centers around

concern for a person's reputation and good name, see Bd. of Regents of State Colls. v.

Roth, 408 U.S. 564, 572-74 (1972); Jones v. Dep't of Navy, 978 F.2d 1223, 1226 (Fed.

Cir. 1992), which plaintiffs do not allege has been harmed here.  To have a protected

property interest, a plaintiff must have more than a unilateral expectation of it, he must

instead have a legitimate claim of entitlement to it, see Roth, 408 U.S. at 576-77, which

again plaintiffs do not have here – as participants in the highly regulated dairy industry,

they could hardly have a legitimate entitlement to be free of economic regulation.

Plaintiffs also suggest that the MREA denies their ability to seek judicial

consideration of their previous challenge to the USDA regulations.  (Mem in Opp. 41-42.)

Plaintiffs are incorrect; the MREA does not deny them the ability to challenge the USDA regulations.  Tellingly, plaintiffs cannot identify any portion of the MREA that bars their administrative appeal rights.

Significantly, as well, the interruption in plaintiffs' prior litigation regarding the USDA regulations was plaintiffs' own doing, by virtue of their voluntary dismissal of their challenge to the amended federal regulations.  See Hettinga v. Johanns, No. 06-cv-00052 (N.D. Tex. Mar. 30, 2006) (stipulation of dismissal) (copy attached to Def's Mot. as Ex. 2).  In contravention of plaintiffs' suggestions (Mem. in Opp. at 41-42), the Northern District of Texas made clear that it denied Sarah Farms's preliminary injunction motion because Sarah Farms failed to allege irreparable injury and to demonstrate a likelihood of success on the merits (for the reasons presented by USDA in its briefing, which preceded the passage of the MREA).  Hettinga v. Johanns, No. 06-cv-00052, slip. op., at 4 (N.D. Tex. Mar. 30, 2006) (copy attached to Def's Mot. as Ex. 1).  To the point, the Northern District of Texas explicitly stated that the passage of the MREA was not "outcome-determinative."  Id. at 4 n.2.  Thus, the passage of the MREA did not bar Sarah Farms from court; rather it was Sarah Farms that prevented a final decision on the merits in the Texas litigation by voluntarily dismissing its own claims.

For these reasons, plaintiffs received the proper process due for public lawmaking, and as explained in defendants' opening brief (Mot. at 21-24), even if due process protections were triggered here, the MREA survives rational basis review.

## CONCLUSION

For the foregoing reasons, in addition to those stated in defendant's renewed motion to dismiss (Def's Mot. (Docket #44)), the Court does not have subject matter jurisdiction over Sarah Farms, and both plaintiffs (Sarah Farms and GH Processing) fail to state a claim for relief.  Consequently, defendant's motion to dismiss should be granted.

Dated: February 22, 2010

Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN R. GRIFFITHS
Assistant Branch Director

    /s/ *Peter J. Phipps*
PETER J. PHIPPS
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 616-8482
Fax: (202) 616-8470
peter.phipps@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C.  20044

Courier Address:
20 Massachusetts Ave., N.W.
Washington, D.C.  20001

Attorneys for Defendant