IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEIN HETTINGA AND ELLEN HETTINGA d/b/a SARAH FARMS, et al. Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Civil Action No.:  06-1637 (RJL) |

**REPLY MEMORANDUM OF AMICI CURIAE
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

DISCUSSION ................................................................................................................- 2 -

I.   Plaintiffs' New Arguments Lack Merit. ...........................................................- 2 -

   A. This Court Can Consider Judicially Noticeable Facts Outside the Complaint In a
       Motion to Dismiss. ............................................................................................- 2 -

   B. All Handlers, Including Plaintiffs, Have The Same Ability To Challenge The
       MREA. ...............................................................................................................- 4 -

   C. Plaintiffs Cited Case Law Regarding Bill of Attainder and Due Process Claims Is
       Irrelevant ...........................................................................................................- 6 -

II.  Plaintiffs mischaracterize the impact and history surrounding the passage of the
     MREA. ................................................................................................................- 7 -

   A.  Section (N) of the MREA is not a forced subsidy – it is a pricing regulation. ...............- 7 -

   B.  Section (M) simply adds to the regulated entities that sell in California and other
       geographic areas not subject to federal regulation. ..........................................- 8 -

   C.  Section 2(b) of the MREA results in additional regulated processors. ...........................- 9 -

   D.  Plaintiffs offer no facts to support their argument that Congress intended the
       MREA to be punitive. .......................................................................................- 10 -

III.  The MREA is Not a Bill of Attainder. ............................................................- 11 -

IV.  Plaintiffs Offer No Legal Support For Their Equal Protection Claim. ............- 13 -

   A.  Plaintiffs offer no case law to support their claim that the MREA somehow
       violates their right to equal protection. ............................................................- 13 -
   B.  Plaintiffs' argument that the MREA disadvantages them fails to acknowledge
       black letter law permitting "discrimination" in the context of a classification
       subject to rational basis review. .......................................................................- 15 -

CONCLUSION............................................................................................................- 16 -

CERTIFICATE OF SERVICE .....................................................................................- 17 -

# TABLE OF AUTHORITIES

## CASES

*ACORN v. United States*, ___ F.Supp.2d ___, 2009 WL 4743348 (E.D.N.Y. 2009) ...........................................................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................7

*BellSouth Corp. v. FCC*, 144 F.3d 58 (D.C. Cir. 1998)......................................11

*BellSouth Corp. v. FCC*, 162 F.3d 678 (D.C. Cir. 1998)....................................11

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) .........................................10

*Covad Comm'cns Co. v. Bell Atlantic Corp.*, 407 F.3d 1220 (D.C. Cir. 2005) .................2

*Does I through III v. District of Columbia*, 238 F.Supp 2d 212 (D.D.C. 2002).................2

*E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621 (D.C. Cir. 1997) .............2

*Elgin v. United States*, 594 F.Supp.2d 133 (D. Mass. 2009) ...............................7

*Federal Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307 (1993)........................................................................................15

*Fletcher v. Jones*, 105 F.2d 58 (D.C. Cir. 1939).................................................3

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) ...............................11

*Hettinga v. Johanns*, No. 5-06CV0052-C (N.D. Tex. 2006) ...............................6

*Hettinga v. Schafer*, No. CV-08-2124-PHX (D. Ariz. 2008) ..............................5

*Hettinga v. United States*, 560 F.3d 498 (D.C. Cir. 2009)..................................5

*Jankovic v. Int'l Crisis Group*, 494 F.3d 1080 (D.C. Cir. 2007) ........................2

*Jones v. Quintana*, 658 F. Supp.2d 183 (D.D.C. 2009)......................................2

*Marshall County v. Shalala*, 988 F.2d 1221 (D.C. Cir. 1993).............................2

*Robertson v. Seattle Audobon Soc'y*, 503 U.S. 429 (1992) ................................6

*Romer v. Evans*, 517 U.S. 620 (1996).................................................13, 14, 15

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662 (9th Cir. 2002)....................11

*Shamrock Farms Co. v. Veneman*, 146 F.3d 1177 (9th Cir. 1998)....................14

*United States v. Boisdoré's Heirs*, 49 U.S. (8 How.) 113, 122 (1850)...............................4

*United States v. Country Classic Dairies, Inc.*, 2007 WL 677138 (D. Utah 2007)...........12

*United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993) ...........................6

*United States v. Rock Royal Co-op.*, 307 U.S. 533 (1939) ................................................12

*Westlands Water Dist. v. U.S. Dep't. of Interior*, 850 F. Supp. 1388 (E.D.Cal. 1994) ......................................................................................................................................3

**STATUTES**

7 U.S.C. § 608c(15) .............................................................................................................5

71 Fed. Reg. 25495 ..............................................................................................................9

71 Fed. Reg. 28248 ..............................................................................................................9

31 P.S. § 700j-101 *et seq.* ..................................................................................................9

FED. R. EVID. 201(b) ..........................................................................................................3

Fed. R. Proc. 12(b)(6) .......................................................................................................14

Haw. Rev. Stat. Ann. § 157-1 .............................................................................................9

Me. Rev. Stat. Ann. tit. 7, § 2901 *et seq* ..........................................................................9

Mont. Code Ann. § 81-23-101 *et seq*................................................................................9

N.D. Cent. Code § 4-18.1 (2007)........................................................................................9

N.Y. Agric. & Mkts. Law § 258-M (McKinney 2007).......................................................9

Nev. Admin. Code ch. 584 (2007).......................................................................................9

Pub. L. No. 109-215, 120 Stat 328 (2006).......................................................................15

Pub. L. No. 109-215, 120 Stat. 330 (2006).......................................................................10

Pub. L. No. 104-121, 110 Stat. 857 (1996).......................................................................12

Va. Code Ann. § 3.1-437 (Michie 2006) ............................................................................9

**MISCELLANEOUS**

2006 Congressional Record at H 1151 (Cardoza comments)............................................10

2006 Congressional Record at H 1151 (Peterson comments) ...........................................10

2006 Congressional Record at H 1152 (Obey comments).................................................10

61A Am. Jur. 2d §§ 584, 596............................................................................................3

Wright & Miller, Federal Practice and Procedure: Civil 3d § 1363 ...................................3

Fourth Edition, Houghton Mifflin Co. 2004.
    http://dictionary.reference.com/browse/penalty. .......................................................12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HEIN HETTINGA AND ELLEN

HETTINGA d/b/a SARAH FARMS, et al.          Civil Action No.:  06-1637 (RJL)

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

**REPLY MEMORANDUM OF AMICI CURIAE
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Amici Curiae United Dairymen of Arizona, Shamrock Foods, Shamrock Farms, Parker Farms and Dairy Institute of California, (collectively "amici") by and through counsel, submit the following reply in support of defendant's motion to dismiss.

**INTRODUCTION**

Plaintiffs' opposition to the defendant's renewed motion to dismiss is both a fleeting and futile attempt to save what is a wholly inadequate complaint.  Because they have presented very few new arguments from their earlier opposition to the 2006 Motion to Dismiss, amici first address additional arguments Plaintiffs raise in their 2010 opposition: (1) the claim that this court is forbidden from considering judicially noticeable facts on a 12(b)(6) motion to dismiss; (2) the notion that the Milk Regulatory Equity Act ("MREA") allows every handler except Plaintiffs to challenge its directives; and (3) that their newly-cited cases support their bill of attainder and due

- 1 -

process arguments.  Amici then readdress issues raised in both the 2007 and 2010 oppositions to

the Motions to Dismiss.  Each of Plaintiffs' arguments—new and old— lands far off the mark

and together fail to resurrect a complaint which has fallen well short of stating any legally

cognizable claim.

## DISCUSSION

I.    **Plaintiffs' New Arguments Lack Merit.**

   A.  **This Court Can Consider Judicially Noticeable Facts Outside the Complaint In a Motion to Dismiss.**

   Without citing a single legal authority, Plaintiffs claim that looking beyond the face of

their complaint to consider judicially noticeable facts is "not supported by the standard of review

applicable to Rule 12 motions."  Opp. at 10.  This contention defies long-settled, black-letter law

in this and every other circuit making clear that considering judicially noticeable facts (among

other limited facts outside a complaint's four corners) is integral to the district court's Rule 12

motion review.[1]

   Yet, ignoring the controlling and persuasive law to this effect, Plaintiffs cling myopically

to an analysis showing how *Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221

(D.C. Cir. 1993) ("*Marshall County*") is factually distinguishable from the case at hand.  Amici

readily concede this point.  *Marshall County* simply illustrates that this hornbook rule applies

---

[1] *See, e.g.*, *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (matters of public record but outside the amended complaint may be considered in a Rule 12 motion); *Covad Comm'cns Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (noting that the court took "judicial notice of facts on the public record" in deciding a motion to dismiss); *E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 623 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents attached thereto or incorporated in the complaint *and matters of which we may take judicial notice*) (emphasis added); *Jones v. Quintana*, 658 F. Supp.2d 183, 188 n.1 (D.D.C. 2009) (quoting *E.E.O.C.* and noting that the court considered, *inter alia*, matters of which it could take judicial notice); *Does I through III v. District of Columbia*, 238 F.Supp 2d 212, 216 (D.D.C. 2002) ("[I]t is well established that courts are allowed to take judicial notice of matters in the public record, *including reports of administrative bodies* . . . without triggering the conversion [to a motion for summary judgment]") (emphasis added).

with equal force in challenges under the Administrative Procedure Act as it does in any other action.  Plaintiffs' assertion that *Marshall County*'s factual differences somehow negate this Court's ability to consider judicially noticeable facts is simply wrong.

The cited cases, and many others in this and other circuits, speak for themselves; in considering the Government's motion to dismiss, a court may consider matters of which it can take judicial notice, including official agency reports whose accuracy cannot be reasonably questioned.[2]  Any contrary arguments are plainly unavailing.

Furthermore, though Plaintiffs make much of the fact that this court must accept as true all their factual allegations, *see* Opp. at 7-11, this court may *ignore* any allegations contradicted by judicially noticeable facts.  *See Fletcher v. Jones*, 105 F.2d 58 (D.C. Cir. 1939); *Westlands Water Dist. v. U.S. Dep't. of Interior*, 850 F. Supp. 1388, 1399 (E.D.Cal. 1994) ("Yet, the court need not accept as true allegations that contradict facts which may be judicially noticed."); Wright & Miller, Federal Practice and Procedure: Civil 3d § 1363 and n.39 ("The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed . . .").  As an allegation central to their bill of attainder claim, Plaintiffs emphasize that the MREA was designed to isolate them alone for its effects.  *See, e.g.*, Opp. at 5 ([The MREA] singled out and punished plaintiffs . . ."), 36 ("It is this specifically focused change in the law applicable to them alone which violates the Equal Protection Clause.").  This "fact" is directly contradicted by the Arizona Federal Milk Marketing Order Administrator, whose reports show *other* entities affected by subsection (N) of the MREA.  *See* Amici Memorandum in Support of

---

[2] *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").  *See also* 61A Am. Jur. 2d § 584 (1999) ("In addition, the court may consider matters which are properly the subject of strict judicial notice, such as . . . matters of public record."); § 596 ("[C]ertain matters outside the body of the complaint itself, such as . . . facts of which the court will take judicial notice, will not trigger the conversion of a [12(b)(6) motion to dismiss] into a Rule 56 motion for summary judgment.").

Motion to Dismiss ("Amici Mem.") at 10, n.3.  Not only may the court consider these reports consistently with Rule 12 motions, but it may, and should, judicially notice the fact that the MREA affected other entities *just like Plaintiffs* and ignore the patently inaccurate allegation that Plaintiffs were somehow singled out.

Similarly, Plaintiffs attempt to convince this Court that it may look *only* to those sections of the MREA that Plaintiffs wish it to see.  *See* Opp. at 18, n.4.  While Subsections (M) and (N) *are* particularly relevant here, this Court is not prevented from taking, and indeed should take, judicial notice of the rest of the MREA, especially when Plaintiffs have referenced the statute throughout their complaint and even base their arguments off other sections in the MREA.  *See, e.g.*, Opp. at 30, 37 (citing § 2(b)).  Furthermore, examining the whole statute is necessary so that the Court may place Plaintiffs' allegations regarding Congress's punitive intent in the context of what is quite plainly a generally applicable law concerning unremarkable economic regulation.  "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the *whole* law, and to its object and policy."  *United States v. Boisdoré's Heirs*, 49 U.S. (8 How.) 113, 122 (1850) (opinion of Court) (emphasis added).

## B.  All Handlers, Including Plaintiffs, Have The Same Ability To Challenge The MREA.

Plaintiffs' due process argument is premised on the idea that they alone were denied process that all other handlers get.  Opp. at 33 (arguing that the MREA creates "two classes of milk handlers").  Their due process arguments fail for the same reasons as their bill of attainder arguments do: Plaintiffs are not the only ones affected by the MREA.  The Hettingas correctly identify the fact that Congress's enacting the MREA meant that the rule USDA promulgated in its wake was not subject to formal rulemaking or a producer referendum.  Yet, for Plaintiffs to be the only affected parties, the law would have to afford these procedural avenues to *every other*

*handler* in the Arizona/Las Vegas Order but deny the same to Plaintiffs.  That notion is absurd. The law makes no such distinction; all handlers find themselves in the same position as Plaintiffs regarding "procedural safeguards applicable to all other milk marketing order amendments." Opp. at 21.  To the extent Plaintiffs must now adhere to the amended order without the benefit of formal rulemaking or a producer referendum, so too must every other entity in the Order. Again, this Court must not accept as true any allegation that is, on its face, incorrect.  *See* section I, *supra*.  Because Plaintiffs have failed to show that any other handler can challenge the MREA any differently than Plaintiffs, this Court must disregard the allegation that Plaintiffs are somehow alone in experiencing fewer "procedural safeguards."

Likewise, in arguing that they have no "opportunity to seek modification or exemption of the provisions," Opp. at 21, Plaintiffs ignore the fact that they have the same opportunity available to *any* handler under the order: an administrative hearing under 7 U.S.C. § 608(c)(15)(A).  Though this Circuit held that Plaintiffs did not need to exhaust their administrative remedies by seeking a 15(A) hearing before filing this action in federal court, *see Hettinga v. United States*, 560 F.3d 498 (D.C. Cir. 2009), neither that court nor this one held that Plaintiffs (or any other handler) could not avail themselves of that remedy.  Indeed, Plaintiffs filed a 15(A) petition regarding the identical issues in this case and sought 7 U.S.C. § 608c(15)(B) review in federal court in Arizona before choosing to continue to pursue this action after remand from the D.C. Circuit.  *See Hettinga v. Schafer*, No. CV-08-2124-PHX (D. Ariz. 2008), Complaint and Stipulation to Dismiss (attached herein as Exhibits 1 and 2, respectively). It is inconsistent, if not disingenuous, for Plaintiffs to seek 15(A) and 15(B) review in separate venues while arguing in yet another that such review is impossible.  It is simply preposterous to do that while asserting the polar opposite: that the MREA burdens *them alone* with no chance to

petition for modification or exemption from the provisions.  Ultimately, Plaintiffs' allegations cannot even be conceivably true, and thus their due process claims fall flat.

### C.  Plaintiffs Cited Case Law Regarding Bill of Attainder and Due Process Claims Is Irrelevant

Plaintiffs' opposition brief recites indiscriminately all manner of case law on bills of attainder and due process, none of which even resemble this case.  Even if one assumes as true all allegations in the complaint—except, of course, those which this Court may disregard as incorrect, *see* section I, *supra*—it simply does not support either claim.

For example, Plaintiffs maintain that Members of Congress passed the MREA solely to stop their litigation in *Hettinga v. Johanns*, No. 5-06CV0052-C (N.D. Tex. 2006), *see, e.g.*, Opp. at 41-42,[3] and they cite *United States v. James Daniel Good Real Property*, 510 U.S. 43, 47-48 (1993) in support.  Opp. at 42.  Yet, *James Daniel Good* involved the seizure without notice of an individual's real property, not the passage of a law allegedly ending litigation.  How Plaintiffs find support in *James Daniel Good* is a mystery to amici, especially when Supreme Court law on point discusses the relevant issue.  *See Robertson v. Seattle Audobon Soc'y*, 503 U.S. 429 (1992) (holding that there is no constitutional violation when Congress passes a law that resolves an issue pending before a court).  Despite their unexplained statement that they "do not make a *Robertson*-type argument," Opp. at 36, Plaintiffs do exactly that.  Even if the Northern District of Texas *did* decide the *Hettinga v. Johanns* case on mootnesss grounds, Plaintiffs would have no valid claim—the Supreme Court's irrelevant holding in *James Daniel Good* notwithstanding.

---

[3] Plaintiffs also maintain that "[the government] cannot deny that the [district] court [in *Johanns*] relied on this ground in denying Plaintiffs' request."  Amici direct this Court's attention to the court's decision in that case where it *did not rely* on the mootness issue and noted that the case was *not even moot.  See* Docket # 44, Motion to Dismiss (renewed) by United States of America, Ex. 1, page 4 ("*Although not outcome-determinative* the Court notes that Congress recently passed [the MREA].  As an initial matter, it would appear that *if the President signs this Act into law*, Plaintiffs' request for injunctive relief *may very well* become moot."  (citation omitted and emphasis added).

Further illustrating Plaintiffs' reliance on non-sequiturs, they cite *ACORN v. United States*, ___ F.Supp.2d ___, 2009 WL 4743348 (E.D.N.Y. 2009) for support that economic harm can qualify as a bill of attainder.  *See* Opp. at 23.  In *ACORN*, the plaintiff alleged that Congress passed an appropriations resolution which: (1) specifically named it; (2) singled it out based on past conduct, and; (3) specifically prevented it from receiving any federal funds, including from contracts already being performed.  Based on the resolution, and the very well-documented events leading up to it, the district court found that the plaintiff had validly alleged the resolution was a bill of attainder.  *See ACORN*, 2009 WL 4743348 at *1.  Whether or not the appropriations resolution in *ACORN* is ultimately found to be a bill of attainder, Plaintiffs' alleged facts land far afield from that case.  Plaintiffs complain of a law that did not specifically name them, applies generally to more than one party, and does not look backward at past conduct.[4]  By Plaintiffs' legal theory, *any* law that applies to a known set of people and operates to their disadvantage is a bill of attainder.  This unconscionable theory would invalidate a broad set of tax laws, administrative regulations, and any other provision that an aggrieved plaintiff simply did not like.  This absurd notion should not be allowed to continue any further, and this Court should dismiss the complaint.

## II.     Plaintiffs mischaracterize the impact and history surrounding the passage of the MREA.

### A.     Section (N) of the MREA is not a forced subsidy – it is a pricing regulation.

---

[4] Unlike *Elgin v. United States*, 594 F.Supp.2d 133, 138 (D. Mass. 2009), where the Military Selective Service Act specifically punished individuals who had failed previously to register for the Selective Service, the MREA lacks any reference whatsoever to any party's past conduct and only regulates in the future based upon future conduct. Plaintiffs' bare allegations that they are being punished for their past conduct are insufficient to establish this fact. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Plaintiffs try to paint the picture that Sarah Farms is being forcibly singled out to subsidize its competitors. *See, e.g.,* Opp. at 6; Comp. ¶ 49.  This picture does not tell the full story.  As explained in amici's brief in support of the renewed motion to dismiss, Amici Mem. at 1-4, Congress and the USDA have created a delicate balancing system in which all handlers, such as Sarah Farms, participate in the equalization pool in order to maintain a stable and equitable marketplace.  The only effect of Section (N) is to bring Sarah Farms, and any other such entity that distributes within the Arizona marketing over three million pounds of fluid milk monthly, within the ambit of the Arizona milk marketing order promulgated by the Secretary. Contrary to plaintiffs' assertion, this order applies not just to Sarah Farms, but to all handlers wherever located that distribute in the Arizona order.  Rather than singling out Sarah Farms, the MREA brings Sarah Farms into the system in which all other large handlers already must participate.

> **B.** **Section (M) simply adds to the regulated entities that sell in California and other geographic areas not subject to federal regulation.**

Section (M) levels the playing field rather than singling out GH Processing.  Prior to the passage of the MREA, any handler that sold more than 25% of its production in a federal order and the remainder in an area not regulated by USDA was still subject in full to the federal order. In other words, milk that a handler sold to an unregulated area such as California was subject, under certain circumstances, to payment into the equalization pool as provided by the order governing the area in which the remainder of that handler's milk was sold.  The MREA simply expands this concept by requiring federal regulation of any entity that sells at least 25% of its milk to California or any other geographic area not subject to a federal order.  Section (M) of the MREA requires that GH Processing and others similarly situated (*e.g.,* plants in Oregon selling

into California) be regulated just as are all the other entities that sell milk into California from outside that state.

The fact that the Secretary amended all federal orders to implement Section (M) further belies plaintiffs' contention that section (M) unfairly singles out GH Processing.  *See* 71 Fed. Reg. 25495 and 71 Fed. Reg. 28248; Comp. ¶¶ 52.1-52.3.   If the MREA was designed to punish GH Processing only, the same provisions applicable to GH Processing could not apply to processors in all federal orders and the Secretary would not have amended all the orders.[5]

### C.    Section 2(b) of the MREA results in additional regulated processors.

Section 2(b) provides additional reason to call plaintiffs' claims into question.  While plaintiffs appear to complain about additional regulation and being the sole subjects of such regulation, Section 2(b) of the MREA increases regulation of processors located in Nevada. Prior to the passage of the MREA, processors in Las Vegas legally were not subject to federal orders under any circumstances even if they sold 100 percent of their milk in Arizona (Order 131).  Section 2(b) now requires that if a Las Vegas processor sells into an area governed by a federal order, that processor will be subject to that federal order (*e.g.,* Arizona).[6]  This would result in greater costs for any such processor selling for instance in Arizona, the same harm that plaintiffs claim is directed exclusively at them.  Section 2(b) is integral and critical because Congress simultaneously closed multiple loopholes when it passed the MREA.  When Las Vegas

---

[5] While plaintiffs fail to mention it, the provisions of Section (M) do not just apply to entities selling into California. They similarly apply to any plant located within a federal order that sells milk into the following states and regions that have non-federal regulation:  Maine, Hawaii, Nevada, Montana, North Dakota, Western New York, Central Pennsylvania, and all of Virginia except the Northern and far Southwestern portions. Me. Rev. Stat. Ann. tit. 7, § 2901 *et seq.* (2000); Haw. Rev. Stat. Ann. § 157-1 to 157-43 (2006); Nev. Admin. Code ch. 584 (2007); Mont. Code Ann. § 81-23-101 *et seq.* (2007); N.D. Cent. Code § 4-18.1 (2007); N.Y. Agric. & Mkts. Law § 258-M (McKinney 2007); 31 P.S. § 700j-101 *et seq.* (2007); Va. Code Ann. § 3.1-437 (Michie 2006).

[6] If the processor sells less than 25% combined into federal order areas, then only that portion of its milk is subject to payment into the equalization pool.  If the processor sells at least 25% into federal order areas, that processor's entire route disposition is subject to payment into the pool.  Plaintiffs inaccurately describe this provision.  Comp. ¶ 52.5.

plants sell into Arizona now, they, like Sarah Farms, are subject to identical regulatory terms and conditions under the Order.

### D. Plaintiffs offer no facts to support their argument that Congress intended the MREA to be punitive.

Plaintiffs' "allegations" that the MREA was punitive both in terms of timing and in terms of content do not qualify as fact. They are conclusions drawn by plaintiffs with no support in the record. *See* Comp. ¶¶ 40-44. Plaintiffs assert that Congress intended to punish them, yet the word "punish," or even the concept of punishment, does not appear in the Congressional Record. Neither does the word "target." *Compare* Comp. ¶ 41 *with* March 28, 2006 Congressional Record at H 1151 (Peterson comments). Representative Obey's comments do not mention either targeting or punishment. *Compare* Comp. ¶ 42 *with* March 28, 2006 Congressional Record at H 1152 (Obey comments). Most damaging to plaintiffs' case, Representative Cardoza actually said that the "bill will close a dangerous loop-hole that allows a few large producer-handlers to escape all these carefully crafted Federal and State regulatory requirements. . . This loophole has the opportunity to affect every milk marketing order across the country."[7] March 28, 2006 Congressional Record at H 1152. *Compare with* Comp. ¶ 44. None of plaintiffs' statements regarding Congressional intent can be taken as fact because they are inaccurate inferences drawn from the statements rather than representations of the statements themselves. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

In their allegations regarding legislative intent, plaintiffs neglect to mention that the Senate unanimously passed the bill that would become the MREA on December 16, 2005, almost 3 months before their lawsuit was even filed. Pub. L. No. 109-215, 120 Stat. 330. Plaintiffs' argument that the legislation was timed to interfere with their hearing falls flat in light

---

[7] This last statement illustrates the far-reaching effects of closing the loophole that could affect the whole country. This undermines plaintiffs' unsupported allegations of the MREA singling them out for punishment.

of the previous Senate passage of the bill.  Plaintiffs have not alleged any facts that support any

of their claims involving punitive intent.

**III.     The MREA is Not a Bill of Attainder.**

Plaintiffs' Bill of Attainder argument misses the mark and fails to address the arguments

of the government and amici in their opening briefs.  In addition to missing the point of the more

recent *BellSouth Corp.* cases,[8] plaintiffs blithely ignore the contrary analysis and conclusion

from the Ninth Circuit in the Exxon Valdes case.  *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta,*

309 F.3d 662 (9th Cir. 2002).  Plaintiffs' explanation and comparison to the *Foretich* case is

likewise inappropriate.  *See Foretich v. United States,* 351 F.3d 1198 (D.C. Cir. 2003).  Beyond

the specificity applied to Dr. Foretich and his parents in the Elizabeth Morgan law, there was in

that case an overturning by Congress of specific and final findings of fact (as opposed to legal

requirements applied prospectively only) by multiple judicial authorities in favor of the Foretichs

and against Elizabeth Morgan.  Congress' imprimatur in that case was permanent, final and

dispositive as to past conduct.  The Foretich family could not alter the punitive result that

affected core parenting rights and stained their reputations with Congressional findings contrary

to litigated facts.  The MREA as applied by USDA through its orders does not make findings of

fact at all.

In contrast, the logical conclusion of plaintiffs' argument is that economic regulations

cannot change to address known loopholes.  Beyond the fact that the MREA can (and does) have

application broader than alleged, beyond the fact that it is not based upon past acts, but future

conduct only, there is the immutable fact that economic regulation does not rise to the level of

punishment necessary in a Bill of Attainder case.  In a recent case, the United States District

Court of Utah was confronted with an assertion that USDA had not complied with certain small

---

[8] *BellSouth Corp. v. FCC,* 144 F.3d 58 (D.C. Cir. 1998); *BellSouth Corp. v. FCC,* 162 F.3d 678 (D.C. Cir. 1998).

business requirements and thus was barred from collecting pool assessments from a milk processor (the very financial charge claimed by plaintiffs here to be punishment) because the Small Business Regulatory Flexibility Act ("SBREFA") (Pub. L. No. 104-121, 110 Stat. 857 (1996) gave courts authority in such circumstances to excuse payments of "fines, penalties, or damages." *United States v. Country Classic Dairies, Inc.*, 2007 WL 677138 (D. Utah 2007). After concluding that like plaintiffs here, Country Classic, in a USDA collection case, could not assert certain defenses because it had failed to exhaust its administrative remedies, the court concluded nonetheless that the SBREFA claim would fail since the pool assessment and late payment charges "are not 'fines, penalties, or damages.'" *Id.* at 7. The Utah Court's finding is entirely consistent with decades of jurisprudence from *United States v. Rock Royal Co-op.*, 307 U.S. 533 (1939), to the present that pool assessments are not takings of property and are not fines, penalties or damages. Indeed, the first definition of "penalty" in *The American Heritage Dictionary of the English Language* is: "a punishment established by law or authority for a crime or offense."[9] In *Rock Royal*, the U.S. Supreme Court expressly disavowed the notion that the complained-of required pool payment deprives plaintiffs of liberty or property. It also took direct aim at plaintiffs' "subsidization of competitors" and equalization of wealth arguments inherent in their Bill of Attainder claims: "No such exaggerated equalization of wealth and opportunity is proposed. The pool is only a device reasonably adapted to allow regulation of the interstate market upon terms that minimize the results of the restrictions." *Rock Royal*, 307 U.S. at 572.

Similarly, the Utah district court's conclusion that the pool assessment due from Country Classic and under the MREA as applied through USDA orders is not a penalty supports the

---

[9] Fourth Edition, Houghton Mifflin Co. 2004.  http://dictionary.reference.com/browse/penalty (accessed February 18, 2010).

position that regardless of all the other allegations, the MREA, which as a result of USDA

rulemaking and issuance of amended orders results in a requirement to make the pool payment,

does not impose punishment under either the SBREFA or the U.S. Constitution's Bill of

Attainder provision.

Based upon *Rock Royal* and its progeny, the Bill of Attainder argument must fail.

**IV.    Plaintiffs Offer No Legal Support For Their Equal Protection Claim.**

       **A.    Plaintiffs offer no case law to support their claim that the MREA somehow
violates their right to equal protection.**

Plaintiffs attempt to get around the motion to dismiss by arguing that an equal protection

claim cannot be decided on a motion to dismiss because the presence of a rational basis for the

classification can only be determined at the "merits stage."  Opp. at 33.  Plaintiffs cite *Romer v.

Evans* in support of their statement.  *Id.*  Unfortunately, neither the quote from *Romer*, nor any

other part of that opinion supports plaintiffs' bald assertion.  *Romer* simply says that in

determining whether a provision violates equal protection, the court must understand the

relationship between the provision and its purpose.  *Romer v. Evans*, 517 U.S. 620, 632 (1996).[10]

*Romer* supports the general equal protection standard, that in "the ordinary case, a law will be

sustained if it can be said to advance a legitimate government interest, even if the law seems

unwise or works to the disadvantage of a particular group, or if the rationale for it seems

tenuous."  *Id.*  All the court must do at this stage is determine if plaintiffs have alleged sufficient

facts to support a claim for equal protection.  Since a statutory provision must meet only the

loosest standard of scrutiny in order to survive rational basis, plaintiffs must allege facts

sufficient to demonstrate absolutely no basis for the MREA, a task plaintiffs fail to fulfill.

---

[10] While the procedural history of the case is not fully detailed in the opinion, it appears that at least the initial decision was in response to a motion for a temporary restraining order, a proceeding in which the court must arrive at conclusions without the benefit of intensive fact-finding, just as in a motion to dismiss.

Plaintiffs' other arguments suffer from a lack of support.  Plaintiffs spend most of a paragraph arguing that there is no basis to dismiss their claim before it can be addressed on the merits, yet they provide nary a citation for this argument.  Opp. at 38-39.  Plaintiffs go on to claim that the Supreme Court in *Romer* "squarely concluded" that plaintiffs have a right to present a rational basis claim on the merits, yet neither the page cited nor any other page in the opinion contains a single phrase that says any such thing.

Furthermore, taking plaintiffs' argument to its logical conclusion, that no equal protection claim can be dismissed pursuant to Rule 12(b)(6), demonstrates the unreasonableness of plaintiffs' position.  FED. R. CIV. P. 12(b)(6).  Case law, including cases cited by both the government and amici, demonstrate that this is simply not accurate.

In *Shamrock Farms Co. v. Veneman*, the 9th Circuit considered a claim for equal protection and due process.  146 F.3d 1177 (9th Cir. 1998).  The *Shamrock Farms* court explained that even though it was not clear that the parties had raised the claims before the District Court, the appellate court could address it "because the arguments are purely legal in nature."  *Id.* at 1183.  The Court found that the plaintiff failed to allege sufficient facts to support its claim, as the plaintiff there, like Sarah Farms and GH Processing, "simply failed to set forth facts that would support an equal protection violation."  *Id.*  The court went on to find that "it is insufficient to assert that the milk laws establish discriminatory classification; the complaint must also allege facts to demonstrate that the classifications are arbitrary or that they are not rationally related to legitimate state interests."  *Id.*  The court therefore dismissed the complaint without getting to the "merits stage."  Because the plaintiffs' claims here suffer from the same

deficiencies as did those of the plaintiffs in *Shamrock Farms*, this court may, and should, dismiss the complaint without proceeding to the "merits stage."[11]

**B.     Plaintiffs' argument that the MREA disadvantages them fails to acknowledge black letter law permitting "discrimination" in the context of a classification subject to rational basis review.**

Plaintiffs fail to address the overwhelming weight of the case law cited by the government and amici (as well as by plaintiffs themselves) which holds that in order to demonstrate rational basis, a law must simply advance a government interest, even if it disadvantages certain entities in so doing. *Romer v. Evans*, 517 U.S. at 633, *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993) ("where there are 'plausible reasons' for Congress' action, 'our inquiry is at an end'.")  Given both the state of the Congressional Record, as described by amici and ignored by plaintiffs, and the Supreme Court holding that "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data,"[12] plaintiffs cannot prove any set of facts that will support their equal protection claim, as the government clearly had a rational basis in passing the MREA in order to provide equity in the milk marketplace.[13]  *See* Amici Mem. at 5-7.

---

[11] Plaintiffs claim that they allege facts in ¶¶ 50-52, 57 and 65 to support their contention that Congress lacked rational basis.  Opp. at 34.  These paragraphs contain no facts.  They are simply conclusory statements by plaintiffs.
[12] *Beach Commc'ns*, 508 U.S. at 315.
[13] Plaintiffs claim that the obvious inference with respect to the purpose of Congress in passing the MREA was to produce the outcome that dairy lobbyists wanted.  Opp. at 40.  This inference is neither obvious nor supported by the facts that plaintiffs chose to ignore.  This includes both the floor comments supporting the legislation as discussed above and the preamble to the bill which says that the act is "to ensure regulatory equity between and among all dairy farmers and handlers for sales of packaged fluid milk in federally regulated milk marketing areas and into certain non-federally regulated milk marketing areas from federally regulated areas. . ."  Pub. L. No. 109-215, 120 Stat. 328.

## CONCLUSION

For all the reasons stated above, as well as in the opening briefs of defendant and amici,

plaintiffs' Second Amended Complaint lacks sufficient factual allegations to support its claims.

Amici respectfully urge this Court to dismiss the complaint.

Respectfully submitted,


/s/ Charles M. English, Jr._____
Charles M. English, Jr.
D.C. Bar No.: 386572
Michael A. Hass
D.C. Bar. No.: 985620
Ober, Kaler, Grimes & Shriver
1401 H Street, NW; Suite 500
Washington, DC, 20005
Telephone:  202-408-8400
Facsimile:  202-408-0640

February 22, 2010                    *Attorneys for Amici Curiae*
                                     *United Dairymen of Arizona, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2010, I electronically transmitted this Reply

Memorandum In Support of Defendant's Motion to Dismiss with the Clerk's Office using the

CM/CF System for filing and transmittal of a Notice of Electronic Filing to the following

CM/CF registrants:


Alfred W. Ricciardi
Hebert Schenk P.C.
4742 North 24th Street
Suite 100
Phoenix, AZ 85016

John F. Cooney
Venable LLP
575 7th Street, NW
Washington, DC 20004

Peter J. Phipps
United States Department of Justice
Civil Division, Federal Programs Branch
P. O. Box 883
Washington, DC 20044


/s/ Michael A. Hass
Michael A. Hass